Fuld, J.
For more than 25 years, petitioner has owned and operated a large amusement park, known as Rockaways ’ Play-land, at Rockaway Beach in Queens County. Well known throughout the metropolitan area, it is patronized by large numbers of people, not only from within the city of New York and the neighboring counties of Westchester and Nassau, but from the State of New Jersey as well. A great deal of money—■ $100,000 in the past year and over $1,000,000 since its inception— has been expended by petitioner in popularizing the park. Its extensive advertising appears in newspapers, on the radio and in train, bus and subway placards; and in these advertisements, as at the amusement park itself, the name Playland and a large figure of a clown’s head are prominently displayed in combination. According to its claim, Playland is, in the vicinity and surrounding area of the Rockaways, immediately identified with petitioner’s amusement park.
Respondent, on the other hand, was organized in the fall of 1952 under the name of Playland Center, Inc., and six or seven months later opened its own much smaller amusement park. It too was situated in Queens, some five miles from petitioner’s Playland, on Cross Bay Boulevard, the main thoroughfare leading to Rockaway Beach. In April, 1953, respondent was told by petitioner that, unless it discontinued use of the name Playland, action would be taken to effect that result. While■ denying the existence of any “ confusion,” respondent removed its sign and did not use it for the balance of the year. In 1954, however, it again erected a sign, a large one, clearly visible to motorists on Cross Bay Boulevard, bearing the announcement V Playland Center, Inc.” and con *303 taining a figure of a clown’s head, not unlike the one featured by petitioner. Following respondent’s refusal to remove the sign, petitioner instituted the present proceeding, pursuant to section 964 of the Penal Law, to enjoin use of the name Playland.
Section 964 makes it a misdemeanor for a person or corporation, with intent to deceive, to use a name for advertising or other purposes, which may mislead the public as to the identity of the party using it. The statute also provides an expeditious civil remedy for an actual or threatened violation of its terms. Dispensing with the necessity for a plenary suit, it sanctions a special summary injunction proceeding, in which a determination may be reached on affidavits alone. No material injury need be shown, the statute explicitly allowing the court to grant an - injunction £ ‘ without requiring proof that any person has in fact been deceived or misled ”.
Since the proceeding is summary in nature, the right to an injunction must be ££ established in a clear and convincing manner.” (Association of Contr. Plumbers v. Contracting Plumbers Assn., 302 N. Y. 495, 498.) That does not mean, however, that the right may be defeated by a bare denial of intent to deceive or mislead the public. The proceeding ‘£ will still lie where the respondent fails by affidavit to establish a true issue of fact ”, and insubstantial or incredible averments will not suffice to raise such an issue. (Matter of Industrial Plants Corp. v. Industrial Liquidating Co., 286 App. Div. 568, 572; see Matter of Alexander's Dept. Stores v. Cohen, 295 N. Y. 557.)
In the case before us, the extrinsic and objective circumstances compel the findings, made at Special Term, of guilty intent and of probability of deception. Respondent, entering a business in which petitioner had long been engaged, not only located its operation, most strategically, on the main road leading to petitioner’s park a few miles away, but actually adopted the very name and symbol which petitioner had been using and popularizing at great expense for more than 25 years. And, when to these factors is added the further circumstance that respondent recognized the likelihood of confusion — as shown by its initial compliance with petitioner’s request that it remove its sign — the conclusion is almost inescapable that respondent intended to trade on petitioner’s name and take *304 advantage of the reputation which petitioner had achieved over the years.
Respondent’s argument, that the name Playland and the clown’s head are in such general use as not to permit a first user the exclusive right to appropriate them, has in the present context little to commend it. Common words may acquire a “secondary meaning” in a given locality, being understood therein to refer solely to a particular business or product. "Where such a secondary meaning has attached, the words may not be used by any competing business in the same geographical area. (See 3 Callmann on Unfair Competition and Trade Marks [2d ed., 1950], § 77.4[d], pp. 1251-1252; 1 Nims on Unfair Competition and Trade Marks [4th ed., 1947], § 38, p. 160; cf. Association of Contr. Plumbers v. Contracting Plumbers Assn., supra, 302 N. Y. 495, 502; Wholesale Service Supply Corp. v. Wholesale Bldg. Materials Corp., 304 N. Y. 854.) Respondent does not dispute the fact that in the Rock-away area “Playland” has come to mean petitioner’s park. That the name is used by others in Manhattan, or that a ‘1 Play-land Pharmacy” or a “Playland Delicatessen ” exists in Queens, is of no moment; the element of competition lacking, the danger of confusion and deception from those sources is nonexistent.
While in certain cases a great disparity in size beween competitors might tend to refute a charge of intentional or probable deception (cf. e.g., Matter of Alexander's Dept. Stores v. Cohen, supra, 29.5 N. Y. 557), it is difficult to perceive how that factor has any bearing upon the question here presented. Petitioner’s case rests to a large extent upon the assumption that people riding along Cross Bay Boulevard and seeing the name Playland and the clown’s head would jump to the conclusion that respondent’s operation was the Playland for which they had started out, or at least that it was owned and operated by the same concern. Although those who live in the area, as well as those who had previously visited petitioner’s park, would not be deceived, there still remain large numbers of the public who have never been to Rockaways’ Playland. It is undoubtedly to that group that petitioner’s advertising is chiefly directed, and manifestly no one of them would be in any position to realize, when he came upon respondents place, that his ultimate destination was a far larger • amusement park, soma *305 distance off. It is the patronage of the wayfaring stranger which respondent stands to gain at petitioner’s expense, and, as already noted, the record requires the conclusion that such was respondent’s intention and hope.
The attempt to usurp the established name and symbol of a competitor afforded more than ample warrant for Special Term’s order granting the injunction provided for by section 964 of the Penal Law.
The order of the Appellate Division should be reversed and that of Special Term reinstated, with costs in this court and in the Appellate Division.
Conway, Ch. J., Desmond, Dye, Froessel, Van Voorhis and Burke, JJ., concur.
Order reversed, etc.