Keating, J.
When should a man’s right to use his own name in his business be limited? This is the question before us.
The individual plaintiff David B. Findlay (“David”) and the individual defendant Walstein C. Findlay (“Wally”) are brothers. The Findlay art business was founded in 1870 by their grandfather in Kansas City. Their father continued and expanded the business with a Chicago branch managed by Wally and a New York branch established and managed by David on East 57th Street. In 1936 the Kansas City gallery was closed and in 1938, after a dispute, the brothers separated. By agreement David, as president of Findlay Galleries, Inc., and owner of nearly all of the stock of the original Missouri corporation, sold to Wally individually the Chicago gallery and allowed Wally to use the name “ Findlay Galleries, Inc.” in the conduct of his business in Chicago. Wally organized an Illinois *17 corporation under the name “ Findlay Gralleries, Inc.” in 1938 and has since operated his Chicago gallery. He also opened, in 1961, a Palm Beach, Florida, gallery.
David, since the separation, has operated his gallery on East 57th Street in Manhattan. For many years he has conducted his business on the second floor of 11-13 East 57th Street.
In October, 1963, Wally purchased the premises at 17 East 57th Street and informed David of his plans to open an art gallery. David objected to Wally’s use of the name “ Findlay ” on 57th Street and by letter announced he would “ resist any appropriation by you in New York of the name Findlay in connection with a gallery * * * any funds spent by you to establish a gallery at 17 East 57th Street under the name Findlay Gralleries, Inc. (or any variation thereof using the name Findlay) are spent at your peril.” David also, in self-defense and in an effort to survive, rented additional space at 15 East 57th Street so as to have a street level entrance.
David’s objections and pleas seemed to have some effect on Wally. As renovation on the building was carried on from October, 1963 to September, 1964, a large sign proclaimed the coming opening of “ W. C. F. Gralleries, Inc.” There was also a display and listing in the New York Telephone directory under the same name and similar advertisements in other publications. However, in September, 1964 the sign was suddenly changed to announce the imminent opening of “ Wally Findlay Galleries ” affiliated with “Findlay Galleries, Inc.” David immediately sought an injunction. Wally went ahead with his opening and erected a sidewalk canopy from the curb to the building displaying the name “ Wally Findlay Galleries.”
The trial court made very detailed findings and, based on them, enjoined defendant from using the names “ Wally Findlay Galleries”, “Findlay Galleries” and any other designation including the name ‘ ‘ Findlay ’ ’ in the conduct of an art gallery on East 57th Street. The Appellate Division has affirmed on the trial court’s findings and we find evidence to sustain them.
The trial court concluded that if injunctive relief were not granted, plaintiff would continue to be damaged by confusion and diversion and would suffer great and irreparable loss in his business and in his name and reputation. In his quarter of a century on East 57th Street David has established a valuable *18 goo'd will and reputation as an ait dealer. Through hard work, business ability and expenditure of large sums of money, David has reached the level where a significant portion of his business coinés from people who have been referred to him by others and told to go to “ Findlay’s on 57th St.”
The effect of Wally’s fieW gallery, with its long canopy, can only be that those looking for “ Findlay’s on 57th 'St.” will be easily confused and find their way into Wally’s rather than David’s gallery. Though Wally perhaps did not deliberately set out to exploit David’s good will and reputation, the trial Cofirt found, and we agree, that such a result would follow if Wally were pennitted to operate a gallery under the name “Wá-lly Findlay G-alleries ’ ’ next door to David.
There were numerous instances of people telephoning or asking at David’s for personnel of Wally’s or for art work exhibited at Wally’s. Many regular customers congratulated David on the opening of “ his ” new gallery next door. Moreover,' advertisements frequently appeared on the same pages of the local press for “ Findlay Galleries ”, “ Findlay’s ”, or “ Wally Find-lay Galleries ” thus making, it very difficult to tell Whose advertisement it was. Even the art editors and reporters referred to Wally as “Findlay Galleries-the name used for many years by David — or as “ the new Findlay Gallery.”
It is apparent that confusion has and must result from Wally’s opening next to David.- This is compounded by the fact that both brothers have for years specialized in French impressionist and post-impressionist painters. Therefore, quite naturally, both brothers have in the past dealt in the works of such famous deceased painter^ as Modigliani, Degas, Renoir, Gauguin, Bonnard, Braque, Monet and many others.
Although someone .seeking a Renoir from David is unlikely to purchase a Degas from Wally, it is likely that with respect to some of the lesser-known impressionists su'ch diversion might happen. More important, someone wishing to own a nude by Modigliani, a dancer by Degas or a portrait of a girl by Renoir would not necessarily have a particular painting in mind and would likely purchase any of these species, whether it be in Wally’s or David’s. The items sold by the two brothers are not unique, nonsubstitutional works.
*19 Moreover, art, particularly modern art, is sold only to those who see it. Works of art are sold to those who cross the threshold of the art gallery and the more people you get into your gallery, the more art you will sell. To this end David has worked hard to develop the name “ Findlay’s on 57th St. ” and bring in customers. Many people who have the finances to purchase art do not necessarily have the knowledge to distinguish between the works of all the various painters represented by galleries such as Wally’s or David’s. For this reason they rely on the reputation of the gallery. David has spent over 25 years in developing satisfied customers who will tell others to go to “Findlay’s on 57th St.” This good will brings in customers who look for a work of art that suits their fancy and, if Wálly were to continue to use the name Findlay, it is inevitable that some would walk into Wally’s by mistake and would have their tastes satisfied there, to David’s great harm.
The so-called “ sacred right ” theory that every man may employ his own name in his business is not unlimited. Moreover, fraud or deliberate intention to deceive or mislead the public are not necessary ingredients to a cause of action. (See Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 468.)
The present trend of the law is to enjoin the use even of a family name when such use tends or threatens to produce confusion in the public mind (Sullivan v. Sullivan Radio & T. V., 1 A D 2d 609). Whether this confusion should be satisfied by misplaced phone calls or confusing advertisements alone we do not decide because there has been a finding that diversion, as well as confusion, will exist if Wally is not enjoined. Thus it is clear that the “ confusion ” with which we are dealing includes impairment of good will of a business.
In Meneely v. Meneely (62 N. Y. 427) this court noted that one can use his own name provided he does not resort to any artifice or contrivance for the purpose of producing the impression that the establishments are identical, or do anything calculated to mislead the public.
Thirty-five years later, we noted that, as a general principle of law, one’s name is his property and he is entitled to its use. However, it was equally a principle of law that no man can sell his goods as those of another. “ He may not through unfairness, artifice, misrepresentation or fraud injure the business of *20 another or induce the public to believe his product is the product of that other.” (World’s Dispensary Med. Assn. v. Pierce, 203 N. Y. 419, 424.)
Ryan & Son v. Lancaster Homes (15 N Y 2d 812, affg. 22 A D 2d 186) is distinguishable from the present case because there was lacking in Ryan the crucial finding that in the absence of relief plaintiff would be damaged by confusion and diversion. There was no real competition between the two businesses. Again, unlike the instant case where “ Findlay’s on 57th St.” is synonymous in New York City with quality art galleries, “Homes by Eyan ” had not become a trade name with a secondary meaning. The court reviewed the law and cited the rule in Meneely. “ This rule has been qualified, as we have said, only to the extent that use of a family name will be restricted where such use tends or threatens to induce confusion in the public mind ”. (22 A D 2d, p. 190.)
In the present case Wally knew that David had conducted his business and built a reputation under the names “ Findlay Galleries ” and “ Findlay’s on 57th St.” and that many years of effort and expenses had gone into promoting the name of “ Findlay ” in the art business on 57th Street. He also knew that people would come into his gallery looking for “ Findlay Galleries ” and even instructed his employees on this matter before he opened. Nonetheless he opened his gallery next door to David dealing in substantially similar works and using the name Findlay. The bona fides of Wally’s intentions do not change the applicable principles. The objective facts of this unfair competition and injury to plaintiff’s business are determinative, not the defendant’s subjective state of mind. Wally’s conduct constituted unfair coinpetition and an unfair trade practice, and it is most inequitable to permit Wally to profit from his brother’s many years of effort in promoting the name of “Findlay” on 57th Street. Wally should use any name other than ‘ ‘ Findlay ’ ’ in the operation of his business next door to his brother.
In framing its injunction the trial court went no farther than was necessary to avoid the harm threatened. It prevented the use of the name Findlay but limited this to the particular area in which its use would cause confusion and diversion — East 57th Street. It resolved the conflict with as little injury as pos *21 sible to Wally. The proof showed and the trial court found that many, if not most of the leading art galleries, are now located on Madison Avenne and in the area of the 60’s, 70’s and 80’s in New York City. Wally could probably have found an appropriate place for his New York gallery other than at 17 East 57th -Street and can now either find such another location or remain where he is under some name such as ‘ ‘ W. C. F. G-alleries
The decision in this case is in accord with the directions of our court: ‘ ‘ The defendant has the right to use his name. The plaintiff has the right to have the defendant use it in such a way as will not injure his business or mislead the public. Where there is such a conflict of rights, it is the duty of the court so to regulate the use of his name by the defendant that, due protection to the plaintiff being afforded, there will be as little injury to him as possible.” (World’s Dispensary Med. Assn. v. Pierce, supra, p. 425.)
The order of the Appellate Division should be affirmed, with costs.