**DECCA RECORDS, a Division of MCA, Inc. and MCA, Inc., Plaintiffs,**

v.

**MUSICOR RECORDS, a Division of Talmadge Productions, Inc., Musico Records, a Division of Talmadge Productions, Inc., Talmadge Productions, Inc. and Arthur Talmadge, Defendants.**

**No. 70 Civ. 2132.**

United States District Court,
S. D. New York.

June 10, 1970.

Simpson, Thacher & Bartlett, New York City, for plaintiffs; Albert C. Bickford, Daniel J. Piliero, II, New York City, of counsel.

Beldock & Kushnick, New York City, for defendants; Howard N. Beldock, New York City, of counsel.

### OPINION

EDWARD WEINFELD, District Judge.

Plaintiffs have clearly established they are entitled to preliminary injunctive relief. Originally, Judge McGohey granted an ex parte temporary restraining order; thereafter this court, to whom the motion for preliminary injunctive relief was referred, after hearing counsel for the respective parties, continued the restraining order, then noting that defendants' record album was a blatant attempt to capitalize on plaintiffs' album and upon

its face constituted unfair competition. A detailed study of the evidence submitted by the parties on this motion fully confirms that view.

Plaintiff, Decca Records (a division of MCA, Inc., also a plaintiff), and the defendants, Musicor Records and Musico Records (divisions of Talmadge Productions, Inc., also a defendant), are in the business of recording, producing and distributing for sale sound recordings. Decca, in 1967, engaged a recording artist known as Vincent Bell to make sound recordings for it under a contract which continues at least to May 30, 1971. This contract provides that Bell will not permit anyone but Decca to use his name, signature or likeness in connection with the making, advertising or marketing of any sound recordings. Pursuant to the agreement, Bell performed and made a sound recording of "Airport Love Theme," a hit tune from a motion picture, "Airport." This recording was a "single," featuring Bell as the performing artist. It was released, sold and distributed by Decca under the title "Airport Love Theme—Vincent Bell." Its commercial success is attested to by sales of more than 300,000 copies. In addition to the single, Decca produced and distributed an album containing ten selections, one of which included the Bell recording, "Airport Love Theme." The nine other sound recordings were of songs also by Bell as the feature artist. The album cover prominently featured "Airport Love Theme" and below that, "Vincent Bell" in large letters, and underneath were listed the titles of the ten different records, starting with "Airport Love Theme." This cover has a pictorial representation of a girl on the deck of an airport looking beyond at an open airfield. The pictorial print cover has been copyrighted by plaintiff Decca, which alleges that all copies of the album cover have been distributed in conformity with the provisions of the copyright laws. Decca asserts that it officially released the album on or before May 11, 1970, although copies became available several weeks in advance to the record album community.

Thereafter the defendants announced they planned to distribute a ten-record album with a cover containing in bold type

*VINCENT*
*BELL*
AIRPORT

and in smaller letters below, "Airport Love Theme." The album cover also contains a picture of a girl at an airport looking out at a field with planes on the ground. The substantial similarity between defendants' album cover and plaintiffs' is so striking that it can admit of no reasonable argument to the contrary. When plaintiffs protested, the defendants proposed a change which, in this court's view, emphasizes defendants' purpose to copy and to pirate plaintiffs' cover album.

The changed album cover contains, in addition to the same photograph as the first, the following: "Introducing Mr. Guitar" in very small letters, followed by large block letters,

*VINCENT*
*BELL*
AIRPORT

and below in much smaller letters, "Airport Love Theme," and below that in almost miniscule type, "Performed by Giovanni Matteo."

The story behind this crude attempt at infringing conduct and unfair competition is telltale. In 1964, Bell was under contract to Talmadge Productions. That contract expired before Bell entered into his present agreement with plaintiff. Under the Talmadge contract, Bell made over forty recordings of various songs. Talmadge asserts it is common practice in the recording industry to release and re-release initial recordings after an artist is no longer under contract. This may or may not be so, but the claimed practice is without relevance on this motion. What is relevant is that plaintiffs have the exclusive right to release recordings of the musical composition "Airport Love Theme" as performed

by Bell; and that Bell at no time ever recorded "Airport Love Theme" for the defendants. Defendants' album contains nine recordings by Bell of other songs made while he was under contract with the defendants; however, "Airport Love Theme," the tenth in the album, was recorded not by Bell, but by Giovanni Matteo, whose name appears in miniscule type on defendants' revised album cover and, as already noted, did not appear at all on its first cover. It is a palpable fraud to display prominently Bell's name in juxtaposition to or in conjunction with "Airport Love Theme" in the format of the cover when in fact he did not record for the defendants that song, which is included in its album, nor did he authorize its use by the defendants. Apart from its substantial similarity to plaintiffs' album cover and infringement of it,[1] that defendants' cover would readily confuse and mislead the average purchaser that it was plaintiffs' product is beyond question.[2] The infringing nature of defendants' first album can hardly be called inadvertent. The change made in the second fairly shrieks a calculated effort by the defendants to continue with their original purpose to "free ride" at plaintiffs' expense.[3] The record, as here presented in the early stages of this litigation, reflects "a consciousness of purpose to engage in unfair competitive activity." [4] It hardly seems necessary, but evidently is, to remind the commercial world what our Court of Appeals said sixty years ago :[5]

It is so easy for the honest business man, who wishes to sell his goods upon their merits, to select from the entire material universe, which is before him, symbols, marks and coverings which by no possibility can cause confusion between his goods and those of competitors, that the courts look with suspicion upon one who, in dressing his

1. *See* Concord Fabrics, Inc. v. Marcus Bros. Textile Corp., 409 F.2d 1315 (2d Cir. 1969) (per curiam); Ideal Toy Corp. v. Fab-Lu Ltd. (Inc.), 360 F.2d 1021 (2d Cir. 1966); *cf.* Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960); Nutt v. National Institute Incorporated for the Improvement of Memory, 31 F.2d 236 (2d Cir. 1929); Trifari, Krussman & Fishel, Inc. v. B. Steinberg-Kaslo Co., 144 F.Supp. 577, 579–580 (S.D.N.Y. 1956).

2. *See* David B. Findlay, Inc. v. Findlay, 18 N.Y.2d 12, 271 N.Y.S.2d 652, 218 N.E.2d 531, cert. denied, 385 U.S. 930, 87 S.Ct. 289, 17 L.Ed.2d 212 (1966) ;. Chas. S. Higgins Co. v. Higgins Soap Co., 144 N.Y. 462, 39 N.E. 490 (1895); Avon Periodicals, Inc. v. Ziff-Davis Pub. Co., 282 App.Div. 200, 122 N.Y.S. 2d 92 (1953) (per curiam); Oneida, Ltd. v. National Silver Co., 25 N.Y.S.2d 271 (Sup.Ct.1940); Rochester Sav. Bank v. Rochester Savings & Loan Ass'n, 170 Misc. 983, 11 N.Y.S.2d 130 (Sup.Ct. 1939). *See generally* Electrolux Corp. v. Val-Worth, Inc., 6 N.Y.2d 556, 190 N.Y.S.2d 977, 161 N.E.2d 197 (1959). The pendant unfair competition claim is governed by state law. Flexitized, Inc. v. National Flexitized Corp., 335 F. 2d 774, 780–781 (2d Cir. 1964), cert. denied, 380 U.S. 913, 85 S.Ct. 899, 13 L.

Ed.2d 799 (1965). But the result would be the same under federal law. *See* Warner Bros. Pictures, Inc. v. Majestic Pictures Corp., 70 F.2d 310 (2d Cir. 1934); *cf.* Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 422–424, 36 S.Ct. 357, 60 L.Ed. 713 (1916); McLean v. Fleming, 96 U.S. (6 Otto) 245, 24 L.Ed. 828 (1877).

3. *See* Flexitized, Inc. v. National Flexitized Corp., 214 F.Supp. 664, 672–675 (S.D.N.Y.1963), aff'd, 335 F.2d 774 (2d Cir. 1964), cert. denied, 380 U.S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799 (1965); Atlantic Monthly Co. v. Frederick Ungar Pub. Co., 197 F.Supp. 524 (S.D.N.Y. 1961); Playland Holding Corp. v. Playland Center, Inc., 1 N.Y.2d 300, 152 N.Y.S.2d 462, 135 N.E.2d 202 (1956); Santa's Workshop, Inc. v. Sterling, 2 App.Div.2d 262, 153 N.Y.S.2d 839 (1956), aff'd mem., 3 N.Y.2d 757, 163 N.Y.S. 2d 986, 143 N.E.2d 529 (1957).

4. Atlantic Monthly Co. v. Frederick Ungar Pub. Co., 197 F.Supp. 524, 532 (S.D. N.Y.1961). *See also* Cortley Fabrics Co. v. Slifka, 175 F.Supp. 66 (S.D.N.Y. 1959).

5. Florence Mfg. Co. v. J. C. Dowd & Co., 178 F. 73, 75 (2d Cir. 1910); *see* Harold F. Ritchie, Inc. v. Chesebrough Pond's, Inc., 281 F.2d 755, 758 (2d Cir. 1960).

goods for the market, approaches so near to his successful rival that the the public may fail to distinguish between them.

 Plaintiffs, upon their copyright claim, have made out a prima facie case of infringement entitling them to preliminary injunctive relief,[6] and upon its claim for unfair competition they have presented a substantial case also entitling them to relief.[7]

The motion for a preliminary injunction is granted. Settle order on one day's notice.

---

6. *See* Uneeda Doll Co. v. Goldfarb Novelty Co., 373 F.2d 851, 852 n. 1 (2d Cir.), cert. dismissed, 389 U.S. 801, 88 S.Ct. 9, 19 L.Ed.2d 56 (1967) ; Rushton v. Vitale, 218 F.2d 434 (2d Cir. 1955). *See also* American Metropolitan Enterprises v. Warner Bros. Records, Inc., 389 F.2d 903 (2d Cir. 1968). Defendants have made no claim that the copyright is invalid.

7. *See* Warner Bros. Pictures, Inc. v. Majestic Pictures Corp., 70 F.2d 310 (2d Cir. 1934) ; National Picture Theatres, Inc. v. Foundation Film Corp., 266 F. 208 (2d Cir. 1920).