BERGHOFF RESTAURANT CO., INC.,
an Illinois corporation, Plaintiff,

v.

LEWIS W. BERGHOFF, INC., an Illinois
corporation, and Lewis W. Berghoff,
Defendants.

No. 72 C 1401.

United States District Court,
N. D. Illinois, E. D.

April 16, 1973.

James T. Fitzgibbon, Wetzel, Greenawalt & Fitzgibbon, Chicago, Ill., for plaintiff.

Anthony A. Chiara, and Dennis A. Gross, Hill, Sherman, Meroni, Gross & Simpson, Chicago, Ill., for defendants.

## MEMORANDUM OPINION and JUDGMENT ORDER

AUSTIN, District Judge.

### I. *Introduction*

This lawsuit involves competing claims between members of the same family to use the surname "Berghoff" in connection with their restaurant operations in the Chicago area. Plaintiff,

Berghoff Restaurant Co., Inc., has continuously engaged in the restaurant business under the name "Berghoff" since 1898 and currently operates two restaurants in the heart of Chicago's commercial district, the Loop. This corporation has been owned, controlled, or managed by members of the Berghoff family since its inception. Lewis W. Berghoff, the individual defendant, worked for the plaintiff corporation for fourteen years prior to leaving its employ and starting his own restaurant in Elgin, Illinois, which is approximately 40 miles from Chicago's Loop. He is presently doing business under the name of "Lewis Berghoff Inn." Plaintiff seeks to enjoin Lewis from so using his surname because it allegedly interferes with plaintiff's state and federal trademark rights.

Procedurally, there are now pending cross motions for summary judgment. No genuine issues of material fact exist and sufficient facts have been presented by affidavit and through the evidentiary hearing on plaintiff's motion for a preliminary injunction in order for this court to render an informed judgment without the necessity of a full trial. For the reasons stated below, this court declines to enter a blanket injunction prohibiting Lewis from using his surname, but nevertheless deems it appropriate to order certain measures designed to preserve the separate identities of the two businesses. These measures will be discussed in Part V of this opinion.

## II. *Jurisdiction*

Count I of this five-count complaint states a claim for trademark infringement under 15 U.S.C. § 1114 and seeks an injunction under 15 U.S.C. § 1116 that would completely restrain defendants from using the name "Berghoff." Count II seeks damages for defendants' alleged false description of their restaurant in violation of 15 U.S.C. § 1125. Count III states a claim under the Illinois antidilution statute, Ill.Rev.Stat., ch. 140, § 19, and seeks monetary and injunctive relief pursuant to that statute and to Ill.Rev.Stat., ch. 121½, § 313. Count IV alleges that defendants have engaged in a deceptive trade practice contrary to Ill.Rev.Stat., ch. 121½, §§ 311 through 318. Finally, Count V asserts a common law right to trademark protection.

■■■ This court has jurisdiction over Counts I and II pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a). Since the deceptive trade practice claim of Count IV is based upon a statute which is a part of Illinois' law of unfair competition, this court has jurisdiction over Count IV pursuant to 28 U.S.C. § 1338(b). As to Counts III and V, this court possesses and hereby asserts its pendent jurisdiction over the claims stated therein because they are derived from a common nucleus of operative fact and are such as would ordinarily be tried in one judicial proceeding, regardless of their federal or state character. United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

At an early stage of this litigation, defendants vigorously argued that this court lacks jurisdiction under the federal trademark statute because the activities of neither plaintiff nor defendants occurred in interstate commerce. Although this is no longer defendants' major defense, it is nevertheless clear that the Lanham Act contemplates a commerce element in the activities of both parties to an infringement suit. Thus, in order to register its trademark, plaintiff's written application must have contained "the date of [its] first use of the mark in commerce." 15 U.S.C. § 1051 (1970). A trademark for services is used in commerce "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce . . . ." 15 U.S.C.A. § 1127 (1970). Similarly, 15 U.S.C. § 1114 (1970) predicates defendants' liability on their use in commerce of an infringing mark.

■■■ The Lanham Act defines interstate commerce as "all commerce

which may lawfully be regulated by Congress." 15 U.S.C. § 1127 (1970). Further, since § 1057(b) provides that a certificate of registration of a trademark shall be prima facie evidence of the validity of the registration, defendants must at least rebut the presumption that plaintiff has used the mark in commerce. Although the resolution of contested fact issues is not proper on a motion for summary judgment, the evidence presented at the hearing on plaintiff's motion for a preliminary injunction conclusively demonstrates that plaintiff has in fact used its mark in interstate commerce by catering to a substantial number of interstate travellers, advertising in media which reach non-Illinois residents, and serving food from extra-state sources.[1] Similarly, defendants have used the allegedly infringing mark in interstate commerce by advertising their restaurant on an interstate highway and in media which reach non-Illinois residents and by serving food from extra-state sources.[2] Surely, plaintiff has met the minimal interstate commerce standards required for the registration of a trademark under the Lanham Act, DeMert & Dougherty, Inc. v. Chesebrough-Pond's Inc., 348 F.Supp. 1194 (N.D.Ill.1972), and defendant's use of its mark occurred either in the flow of commerce or had a substantial effect on it. Lyon v. Quality Courts United, Inc., 249 F.2d 790 (6th Cir. 1957); American Dairy Queen Corp. v. Augustyn, 278 F.Supp. 717 (N.D.Ill.1967). Therefore, this court may properly exercise its federal jurisdiction over this action.

### III. The Federal and Common Law Trademark Claims [3]

■ In order to recover for trademark infringement under either the Lanham Act or at common law, the plaintiff "must show prior use of its own mark and the defendant's use of a 'confusingly similar' mark in competition with it." Ye Olde Tavern Cheese Products, Inc. v. Planters Peanuts Div., Standard Brands, Inc., 261 F.Supp. 200, 204 (N.D.Ill.1966), aff'd per curiam, 394 F.2d 833 (7th Cir. 1967) [hereinafter cited as *Ye Olde Tavern Cheese*]. Since plaintiff's prior use of the Berghoff mark is undisputed, the only issues left for resolution are confusing similarity and whether the parties are in competition. As to these matters, I find and the parties agree that there is no genuine issue of material fact that would preclude the entry of summary judgment.

■ First, with regard to confusing similarity, it cannot be denied that Lewis Berghoff's surname is identical with that of plaintiff's restaurant and that he has at times alternatively operated a restaurant under the names, "Lewis Berghoff Inn" and "Lewis Berghoff's Mountain House Restaurant." Hence, a similarity between the names undoubtedly exists, but as noted in *Ye Olde Tavern Cheese* at 205 a claim for infringement is not sustained merely with a "side-by-side" comparison. "Rather, the test is one of consumer confusion, in light of the manner in which consumers purchase these products." 261 F.Supp. at 205.

---

1. Interstate advertising is sufficient interstate activity for Lanham Act purposes. Tiffany & Co. v. Boston Club, Inc., 231 F.Supp. 836 (D.Mass.1964). Catering to out-of-state persons and serving food from extra-state sources also constitutes interstate commerce. Daniel v. Paul, 395 U.S. 298, 89 S.Ct. 1697, 23 L.Ed.2d 318 (1969).

2. *Id.*

3. As noted in Ye Olde Tavern Cheese Products, Inc. v. Planters Peanuts Div., Standard Brands, Inc., 261 F.Supp. 200, 204 n. 1 (N.D.Ill.1966) aff'd per curiam, 394 F.2d 833 (7th Cir. 1967), the principles of statutory trademark law and the tests for infringement are basically the traditional ones of common law. Since statutory registration merely facilities the proof of certain issues, a separate discussion of the statute and common law is unnecessary.

■ I find that the facts adduced from the parties' affidavits and the hearing on plaintiff's motion for a preliminary injunction demonstrate that, aside from the use of the Berghoff surname, the restaurant services rendered by these parties are essentially different and that consumers purchasing these services would readily recognize the difference. Thus, for example, in architecture, decor, menu, price, and overall appearance plaintiff's restaurants stress the German heritage of the Berghoff family and their ties to "Old Chicago" as it was 75 years ago. Defendants' Elgin restaurant, on the other hand, is contemporary in decor and architecture, serves considerably fewer German dishes and considerably more French dishes, and on the whole costs more than the downtown Berghoff operations. These and other differences are well-documented in the record of this case and lead me to believe that on the whole there is no confusing similarity between the services rendered by the parties herein. Moreover, the 40-mile distance between the parties' restaurants and the differences just noted also lead me to believe that in fact they are not truly competing for the same clientele of the restaurant-going public.

■ Nevertheless, there remains the question of the same surname, a problem whose dimensions are suggested by the language of this very opinion, *e. g.,* "the downtown Berghoff operations." Plaintiff contends that its federal and common law trademark rights entitle it to an injunction prohibiting Lewis Berghoff from using his own surname in connection with his Elgin restaurant. Stork Restaurant, Inc. v. Sahati, 166 F. 2d 348 (9th Cir. 1948); Nagrom Corp. v. Cock 'N Bull, Inc., 149 F.Supp. 217 (D.D.C.1957). But in doing so plaintiff overlooks the fact that, unlike many of the cases upon which it relies, the allegedly infringing name in this case also happens to be the surname of one of the defendants. Under these circumstances, the rule in this Circuit is:

'In the absence of contract, fraud or estoppel, any man may use his own name in all legitimate ways and as a whole or a part of a corporate name'; it is only when the use is dishonest or fraudulent that the court may interfere; courts will not act where the only confusion, if any, results from similarity of names and not from manner of use. Benrose Fabrics Corp. v. Rosenstein, 183 F.2d 355 (7th Cir. 1950), citing, Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S. 118, 140, 25 S.Ct. 609, 49 L.Ed. 972 (1905).

More recently this rule was followed in Friend v. H. A. Friend & Co., 276 F. Supp. 707 (C.D.Cal.1967), aff'd 416 F.2d 526 (9th Cir. 1969), cert. denied, 397 U. S. 914, 90 S.Ct. 916, 25 L.Ed.2d 94 (1970), a case which granted only limited injunctive relief even though there had been an obvious attempt to confuse the public by using the family surname to compete for identical markets.

Plaintiff's counsel has vigorously disputed this rule of law and erroneously suggests that it is no longer viable either under trademark infringement law or state anti-dilution statutes. 3 R. Callman, Unfair Competition Trademarks and Monopolies § 85.2(d)(1), at 1036–38 (1969). While that author criticizes the rule of law that governs this case, he also devotes considerable energy to examining the cases which have applied it. Callman, *supra* § 85.2(a) through § 85.2(c). He is of the opinion that a surname should be accorded the same protection as any other trademark because, "Goodwill established through effort and labor should be deserving of more consideration than the fact that the business name of a competitor happens to be identical with his own family name." Callman, *supra* at 1037.

With this proposition the court is inclined to agree, but it should also be noted that this is not a case where the defendant has contributed nothing to the goodwill of the surname he seeks to use. Here, the individual defendant was an

employee of his family's restaurant for fourteen years before striking out on his own. Surely, his contribution to the goodwill of the Berghoff name was more than insignificant. Thus, even if this court were to adopt Callman's critique of trademark cases, this situation clearly deserves a more delicate balancing of the equities than that suggested by the plaintiff. *Cf.* David B. Findlay, Inc. v. Findlay, 18 N.Y.2d 12, 271 N.Y.S.2d 652, 218 N.E.2d 531 (1966).

## IV. *Dilution and Unfair Competition*

What has just been said about plaintiff's trademark infringement rights can generally be applied to its claims for relief based on the Illinois Anti-Dilution Statute, Ill.Rev.Stat., ch. 140, § 19, and unfair competition, 15 U.S.C. § 1125 and Ill.Rev.Stat. ch. 121½ §§ 311–318. This is simply not a case where the defendants have attempted to pass off basically identical services in order to capitalize on plaintiff's name. While the court would be blind if it failed to recognize that Lewis' use of the family name was not simply a fortuitous coincidence, the potential for abuse can readily be reduced without a blanket prohibition against his use of the surname.

▆▆ Plaintiff's counsel, nevertheless, argues that somehow the state anti-dilution statute entitles his client to greater protection than that afforded by federal law. Without even considering the problems this argument may raise under Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed. 2d 661 (1964) and Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), I find that the Illinois statute affords the relief plaintiff seeks only when the offending mark is other than an individual's surname. Polaroid Corp. v. Polaraid, Inc., 319 F.2d 830 (7th Cir. 1963); Poorman v. Julian, 22 Ill.App.2d 208, 214, 160 N.E.2d 169 (1959). *Cf.* Allegretti v. Allegretti Chocolate Cream Co., 177 Ill. 129, 52 N.E. 487 (1898).

## V. *The Injunction*

In view of the foregoing discussion, Lewis W. Berghoff, Jr., his corporation, and all those who could ever claim through him an interest in the surname, Berghoff, are enjoined from conducting a restaurant business under the Berghoff name unless it is preceded by the given name, Lewis, in the same size letters as those used to write the surname, Berghoff. The name, Lewis Berghoff, may be used alone or in conjunction with other words that identify his restaurant, but those words need not be in the same size lettering as the words, Lewis Berghoff. All advertising of Lewis' restaurant, whether it be printed or broadcast on radio or television, must contain the disclaimer "Not affiliated with the Berghoff Restaurants in Chicago." This disclaimer must appear on all billboard advertising, but need not appear on Lewis' sign facing Interstate 90 or on the sign above his restaurant. These signs, however, are not exempt from the requirement that the words Lewis and Berghoff be written in the same size letters. Furthermore, the above disclaimer must appear on the front of the Lewis' menus in print no less than one pica in size.

Pursuant to 15 U.S.C. § 1116, Lewis W. Berghoff, Jr. is directed to file with the court and serve on the plaintiff within sixty days from today, a report in writing under oath setting forth in detail the manner and form in which he and his corporation have complied with this injunction.