**MILLER BREWING COMPANY,**
**Plaintiff,**

v.

**G. HEILEMAN BREWING CO.,**
**INC., Defendant.**

**No. 76–C–584.**

United States District Court,
W. D. Wisconsin.

Feb. 22, 1977.

and, with two exceptions, I find as fact those allegations contained in the affidavits of John S. Skilton dated January 24, 1977, John S. Pedace dated January 28, 1977, Anthony L. Fletcher dated January 28, 1977, Phil A. Grau dated January 27, 1977, John S. Pedace dated February 3, 1977, James Van Santen dated February 8, 1977, Russell G. Cleary dated February 3, 1977 (entitled "declaration of intent"), and Anthony L. Fletcher dated February 11, 1977. The two exceptions are as follows: (a) With respect to the Cleary declaration of intent, I construe it to mean that defendant intends to use the label attached as Exhibit X to the declaration of intent only if this court first declares that such use would not be violative of the January 21, 1977 preliminary injunction; and I construe it also to mean that defendant intends to abandon use of the label attached to the complaint as Exhibit E only when the said preliminary injunction becomes effective, whether this be March 2, 1977, or the termination date of some further stay or stays which may be granted. (b) With respect to the Fletcher affidavit of January 28, 1977, I do not find as fact the statements contained in a Meister Brau letter of April 10, 1972 to its Lite beer wholesalers and sales representatives. I also take judicial notice that in general terms, when foods containing carbohydrates are ingested and absorbed by humans, heat measured in calories results, so that the fewer the carbohydrates present in a food, the fewer the calories.

John D. Winner, Winner, McCallum & Hendee, Madison, Wis., Anthony L. Fletcher, Conboy, Hewitt, O'Brien & Boardman, New York City, Allen W. Leiser, Quarles & Brady, Milwaukee, Wis., for plaintiff.

James Van Santen, Hill, Gross, Simpson, Van Santen, Steadman, Chiara & Simpson, Chicago, Ill., Steven E. Keane and John S. Skilton of Foley & Lardner, Milwaukee, Wis., for defendant.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This opinion and order is addressed to the following pending motions by the defendant: (1) a motion filed January 24, 1977 for an order vacating a preliminary injunction entered herein January 21, 1977; (2) a motion filed February 4, 1977 (as an alternative to motion (1)) for an order permitting defendant to use a certain alternative label and to provide a period for the change-over; and (3) a motion filed January 24, 1977 for an order suspending the preliminary injunction entered January 21, 1977 pending an appeal from said injunction. For the purpose of deciding these motions, and for no other purpose, I renew the findings of fact set forth in the opinion and order entered herein January 21, 1977,

### (1) Defendant's motion filed January 24, 1977 to vacate preliminary injunction

Apart from simple disagreement with the findings and conclusions underlying the grant of the preliminary injunction on January 21, 1977, defendant's contentions in support of the motion to vacate are: (a) that the registrations relied upon by plaintiff expressly applied to beer with no available carbohydrates, and thus afford plaintiff no procedural advantage in this lawsuit alleging infringement by defendant's use of a label applied to beer containing some available carbohydrates; and (b) that

"light" has now become a generic term for low-calorie beer.

### (a) *No available carbohydrates*

There is no evidence in the record from which I can make an intelligent construction of the word "available." Conceivably, if all the carbohydrates in Heileman's "Light" are unavailable, then it contains no available carbohydrates and the Miller registration would clearly be applicable to Heileman's "Light."[1] But I consider this too precious a view of the matter. I will assume that as used by Miller in the registration process "no available carbohydrates" means "no carbohydrates." Thus it is apparent that Miller is now using the registered mark in distributing a beer which is low in calories but which does contain carbohydrates, and that Heileman is using its label E[2] in distributing a beer which also is low in calories, but which also does contain carbohydrates.

■ As I observed in my January 21 opinion, the statutes confer upon a trademark registrant certain significant procedural advantages in litigation involving the trademark. Defendant contends that the registrant should be deprived of those advantages except when the product bearing the allegedly infringing label is the exact functional equivalent of the product described in the successful application for registration. I see no good reason for so severe a rule, nor am I persuaded that there is authority for it. On the contrary, as plaintiff contends, infringement can occur in some circumstances even when the product bearing the allegedly infringing label is quite different from that described in the application for registration. In any event, there is no significant difference here. Undoubtedly, the practical importance of the references to the presence or absence of carbohydrates in the course of registration, if they were of practical importance, was in the context of calories and in the context of the effect of the caloric content upon the weight of humans who might consume the

beer. So long as the beer bearing the allegedly offending label is distinctly low-calorie beer, as is true of Heileman's "Light," plaintiff should enjoy in this litigation the procedural advantages conferred upon it by statute.

### (b) *"Light" now generic*

■ The only reasonably hard evidence yet in this record is that offered by plaintiff concerning consumer perceptions of the label "LITE." From that evidence, the fair conclusion is that until Miller was well launched with its promotion of "LITE," the word "light" as applied to beer did not signify to the public generally that the beer was low in calories. Up to a certain point thereafter, then, to the extent that "light" or "LITE" gained this significance, it was in relation to Miller's campaign and Miller's product. I cannot ignore the evidence defendant has adduced, nor avoid the exercise of a degree of judicial notice of a matter of common knowledge, to the effect that in recent months this state of affairs has been altered and diffused as a number of Miller's competitors have entered the low-calorie beer field. In varying ways, they have used "light" to signify this particular attribute, as well as other attributes, of their respective beers. It seems clear that Miller has resisted promptly and diligently in those instances in which the particular conduct of a particular competitor has been arguably illegal, and the outcome of those several contests in the courts is unknown. Whether Miller should be held to have lost its legal advantage as a result of this challenged activity by its competitors has been a troublesome point from the start of this present case in this court. I am unwilling to answer the question definitively as a rule of law. But I do conclude at least that Miller should not be held to have lost the legal advantage it once held, unless there is a clear showing by hard evidence that the word "light" as applied to beer is now widely understood by the public to denote a beer

---

1. For convenience, I will speak of the Meister Brau registration as the Miller registration.

2. The label which appears as Exhibit E attached to the complaint.

with low-caloric content. No such clear and hard showing has been made.

### (2) *Defendant's alternative motion filed February 4, 1977, for leave to change-over to Label X* [3]

■ Had defendant made an unconditional statement of its intention to discontinue the use of Label E after about 12 weeks, and thereafter, during the pendency of this case, to use Label X, I would have considered that a major change had occurred in the conditions underlying the issuance of the preliminary injunction on January 21, 1977. It would have meant that the plaintiff was facing the threat of the infringing use of Label E for only a relatively short period. It would also have meant that for the longer run, during the pendency of this case, the plaintiff was faced with a new and different threat. This new and different threat would have been that defendant would promote and market its low-calorie beer under Label X. Plaintiff might then have chosen to seek a modification of the preliminary injunction so that it would expressly prohibit the use of Label X as well as Label E. In that context, it would have been necessary for plaintiff to persuade the court that there would have been a good chance that it would ultimately succeed in its contention that the use of Label X would be an infringement. On the other hand, plaintiff might have elected to do nothing until the use of Label X actually began, and then to commence contempt proceedings on the ground that Label X is a "colorable imitation" of plaintiff's trademark already banned by the injunction.

But this is not what defendant has done. Rather, defendant seeks a declaratory adjudication now that Label X is not a "colorable imitation" of plaintiff's trademark, and therefore is not a violation of the preliminary injunction. Only if defendant obtains such a favorable declaration will it proceed with the change-over. If no judicial declaration is forthcoming, or if it is made but is unfavorable to defendant, defendant intends to continue the use of Label E until firmly enjoined.

In considering whether to respond to the request for a judicial declaration, I have the following factors in mind. If one were to assume that this present lawsuit had run its course and that plaintiff had obtained a permanent injunction phrased exactly as the preliminary injunction is phrased, and if defendant were then to engage in the use of Label X, and if contempt proceedings were then initiated, the court would be called upon to decide whether Label X is a colorable imitation of plaintiff's trademark. This decision would not be made in the framework of probable success or failure of plaintiff in its contention that an infringement was occurring. It would be definitive; the court would be holding flatly either that Label X is a colorable imitation or that it is not.

It appears that this is exactly what is now sought from the court. Although the present injunction is only preliminary, the question whether Label X violates it is identical to the question whether Label X would violate a permanent injunction identically phrased. The answer to this question, either as to the preliminary injunction or the hypothetical permanent injunction, would turn upon the likelihood of consumer confusion as between the trademark and Label X.

I conclude that the record in this case does not support a definitive judicial declaration on this question, one way or another, and I decline to make such a declaration.

### (3) *Defendant's motion filed January 24, 1977 for a stay pending appeal*

I am unwilling to stay the preliminary injunction of January 21, 1977, as modified by my order of February 1, 1977, until an appeal from it is finally decided. However, I conclude that defendant is fairly entitled to seek such a stay from the Court of Appeals before it is compelled to discontinue its use of Label E.

---

**3.** Exhibit X to the Cleary "declaration of intent" dated February 3, 1977.