Warshawsky & Company, Complainant and Appellee, v. A. Warshawsky & Company, Inc. et al., Defendants and Appellants.

Gen. No. 33,840.

Opinion filed May 29, 1930.

LITSINGER, HEALY & REID, for appellants; JAMES A. O'CALLAGHAN, of counsel.

JOSEPH ROSENBERG, for appellee; PHILIP R. TOOMIN, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is an unfair trade competition case. Complainant's bill, filed March 11, 1929, prayed for injunctional relief against defendants. On July 6, 1929, after a protracted hearing before the chancellor during which

a mass of oral and documentary evidence was introduced by the parties, the court entered the decree appealed from, in which it is adjudged that the defendant, ''A. Warshawsky & Company, Inc.,'' an Illinois corporation, its officers, attorneys, agents, etc., be and they are perpetually enjoined:

''1. From using the name 'A. Warshawsky & Company, Inc.'

''2. From using, in the advertising, disposition, distribution or sale of new and secondhand automobile accessories, replacement parts, etc., or in the sale and purchase of secondhand automobiles for wrecking purposes, or upon any letterheads, catalogues, literature, signs, advertising matter, or otherwise, or verbally, the word 'WARSHAWSKY' *in its secondary sense* as hereinbefore defined.

''3. From holding out or representing that said defendant is a representative of, or in any way connected with complainant, 'WARSHAWSKY & Co.,' in the sale and purchase of secondhand automobiles, trucks and truck parts, accessories and replacement parts, and the wrecked car business.

''4. From copying portions of advertisements of complainant, painting or marking the same on its windows, and adding thereafter the words 'as advertised,' in pursuance of a policy of unfairly competing with complainant.

''5. From engaging in unfair competition by copying the advertising methods of complainant, by giving away similar key rings at or about the same time complainant is extensively advertising its business and giving away its key rings, in pursuance of a policy of unfair competition.

''6. From engaging in unfair competition by simulating the signs and color schemes adopted by complainant and used by it in connection with its said business, and appearing on its said premises at 1915–35 South State Street, Chicago; and from simulating the

appearance, construction, color scheme and design of the tow trucks operated by complainant, all in pursuance of a policy of unfair competition.''

And it is also adjudged that the defendants, Arthur Warshawsky, Charles Warshawsky and Sarah Warshawsky, their employees, attorneys, agents, etc., be perpetually enjoined from doing acts substantially as above stated in paragraphs 3 to 6, inclusive. The language of the injunction as to them, concerning the use of the defendant corporation's name and of the word "Warshawsky," is different from that in paragraphs 1 and 2 as above stated, and is as follows:

"From using the names 'A. Warshawsky & Co.,' or 'A. Warshawsky & Company,' in print, script or writing, in any form whatsoever.

"From using, in the advertising, disposition, distribution or sale of new and secondhand automobile accessories, replacement parts, etc., and in the buying of secondhand automobiles and trucks intended for wrecking purposes and new and used automobile accessories, the word 'WARSHAWSKY,' either alone or in combination or in corporate name, *in its secondary sense* as hereinbefore defined, *unless* there is added to said name, in letters of the same size, type, script or writing by which said name is displayed, the words 'not connected with the *original* Warshawsky & Co.' ''

In the decree the court made many findings, some of which are in substance as follows:

That about May 21, 1915, complainant was organized as an Illinois corporation, with the name "Warshawsky & Co." for the purpose of "buying, selling and dealing in, . . . plumbing, electrical and heating supplies, rags, rubber, iron and metal goods, radiators, gas fixtures, pipe fittings and electrical supplies," etc., with capital stock of $2,000, and with principal place of business at Nos. 1925–29 (now 1915–35) South State Street, Chicago; that Israel Warshawsky has been and is now its president, and Nellie, his wife, its vice presi-

dent, and the two are its principal stockholders; that in addition to its plumbing supply business it "pioneered in and developed" the purchasing of secondhand automobiles and trucks which it wrecks,—retaining such parts as can be resold, and that in the latter part of the year 1915 it began to purchase and sell stocks of automobile and truck parts and accessories; that its business is a "highly specialized and unique" one; and that it employs about 150 persons, many of whom are skilled mechanics.

That since its organization it has continuously advertised the name "Warshawsky," and the products which it sells, by advertising compaigns in the Chicago newspapers, by circulars, catalogues, etc., and by advertisements in many magazines; that it issues two catalogues each year to 150,000 dealers and jobbers in the United States and Canada; that special catalogues and circulars are sent each year to about 25,000 retail customers; that its name and business have further been exploited and featured on the stage, by radio broadcasting, etc.; that for many years, during the month of June, it has advertised its "anniversary sale," in newspaper and other advertisements, and the fact that key rings would be given to all purchasers at such sales; that it has expended each year large sums in advertising, the expense of which during the year, 1928, being $39,209; that its net sales during 1928 were $989,458; that it has maintained, and now maintains, large signs on its stores, yards and warehouses, advertising its name and business; and that it has been and is now operating motor trucks, and tow trucks, carrying the name "Warshawsky & Co."

That in all of its advertising the name "Warshawsky," and "Warshawsky & Co." have been prominently featured and displayed; that the name "Warshawsky" has "acquired a secondary meaning" as applied to "replacement parts for automobiles and trucks, and the salvaging and wrecking of automobiles and trucks,

and new accessories and parts for automobiles and trucks, sold by complainant''; that the name has become well known to persons, firms and corporations, having need for such replacement parts, new parts and accessories, and to those persons, etc., desiring to sell or purchase secondhand automobiles, trucks or parts; that such persons, etc., as well as the public generally, ''have associated, and still continue to associate, the name 'Warshawsky' with the business conducted by complainant''; and that it is well known to the trade and to the public generally that any automobile or truck part, or accessory, can be replaced or found at complainant's State Street store.

That defendant, Arthur Warshawsky, a resident of Chicago, is an older brother of Israel Warshawsky, president of complainant; that during the year 1911, and thereafter until February, 1914, Arthur was engaged in the junk business with his father, Louis, at No. 3227 South State Street, Chicago; that beginning in February, 1914, he, individually, was engaged in the junk business at said address, under the name of ''A. Warshawsky'' or ''Arthur Warshawsky,'' up to about October, 1918; that in 1918 he and one Weller commenced a copartnership business, as ''Warshawsky, Weller & Co.,'' at No. 3021 South Michigan Avenue, Chicago, for the buying and selling of junk, metals and automobile accessories; that in 1919 he purchased all of Weller's interest in the business and there individually continued it for a time; that about June 20, 1919, he sold to complainant all his stock and merchandise, and for about six months thereafter was not engaged in any business; that about January 1, 1920, he commenced the business of selling automobile supplies at his former location (No. 3227 So. State Street) under the name of ''A. Warshawsky'' or ''Arthur Warshawsky''; that some time in 1923, he moved to No. 1621 South Wabash Avenue, and there conducted until 1928 an automobile accessories' busi-

ness, as well as that of wrecking new and used cars and selling new and secondhand replacement parts for automobiles; and that his business signs during the period read "Arthur Warshawsky," and in some instances after 1924, "A. Warshawsky & Co."

That about February 1, 1928, Arthur changed his business location to No. 3220 Ogden Avenue, Chicago, and there conducted the same business, hiring six employees; that he caused the signs upon the building and windows to read "A. Warshawsky & Co.,"—"the letter 'A' being about one-third the size of the other letters"; that he installed an electric sign, bearing the words in small size "auto-parts and accessories," and in the middle of the sign the name "A. Warshawsky & Co."; that as originally installed the letters of the word "Warshawsky" were nine inches in height, while the "A" and the "& Co." were only six inches; that shortly thereafter the size of the letters of the name in the sign was increased to twenty inches, while the size of the "A" and the "& Co." was not increased; that, although the letter "A" in the sign was designed to be illuminated, yet he "did not, and does not now, illuminate said letter 'A', and when said sign is illuminated only the name 'Warshawsky & Co.' is visible and prominently displayed"; that the adoption and affixing of said signs and the color schemes thereof, because of their close similarity to the signs and the color schemes theretofore adopted and used by complainant "were calculated to deceive the public into believing that said defendant's place of business was *a branch store,* or in some way connected with complainant's place of business at 1915 South State Street," and that defendant's acts as to said signs "were intended by him to mislead the public and to secure to him a benefit and advantage from complainant's good will and reputation, in pursuance of a policy of unfair competition"; and that after the organization of defendant corporation, as hereinafter men-

tioned, and after it took over Arthur's said business, it adopted the same signs and color schemes and continued to use the name, with the intention of deceiving the public and for the purpose aforesaid.

That about November 8, 1928, defendants, Arthur Warshawsky, Sarah (his wife) and Charles (his son), caused to be organized an Illinois corporation, known as "A. Warshawsky & Company, Inc.," to engage in the business of "buying, selling, manufacturing and dealing in all kinds of automobile parts, machineries and accessories, the wrecking of automobiles," etc.; that it succeeded to the business and assets of Arthur at Nos. 3218–20 Ogden Avenue, and has since there conducted the business; that its name is so similar to that of complainant's adopted in 1915, as to be a violation of a provision in section 24, chapter 32, of the Illinois statutes, prohibiting the organization of a corporation in this State, having the same or a similar name as that of another corporation previously authorized to do business in the State; that on February 7, 1929, the Secretary of State of Illinois notified defendant corporation by letter that its particular name had been granted through a mistake, and suggested that it change its name, because of its similarity to complainant's; but that defendant corporation refused to comply with the suggestion.

That Arthur, from the time he moved his place of business to No. 3220 Ogden avenue, commenced to operate a certain tow truck, on which the name "A. Warshawsky & Co." was painted—the letter "A" being about one-third the size of the letters forming the word "Warshawsky"; that the name was painted on a curved or semicircular board affixed above the body of the truck; that the shape of the board, the lettering thereon and the color scheme thereof were similar to those appearing on the tow truck operated by complainant; that the same were designed, used

and operated by Arthur ''for the purpose of deceiving the public into believing that his tow truck was a tow truck of complainant's and for the further purpose of wrongfully benefiting from the good will, business and reputation established by complainant''; and that defendant corporation, since its incorporation, has operated, and is now operating, the same tow truck, unchanged in appearance, for the same unlawful purposes.

That when Arthur moved his business to No. 3220 Ogden Avenue about February, 1928, he ''commenced a policy or scheme'' of copying portions of complainant's advertisements, inserted from time to time in Chicago newspapers, ''by painting or chalking some of the articles of merchandise, so advertised by complainant, on his Ogden Avenue store windows at the same prices as those advertised by complainant and adding thereto the words 'as advertised' ''; that these acts ''were calculated to deceive the public into believing that defendant's place of business was a *branch store* of, or in some way connected with, complainant''; that he did these acts intentionally for the purpose mentioned; and that defendant corporation, since its organization, has continued to do the same acts, and for the same unlawful purpose, with the knowledge of defendants, Arthur, Charles and Sarah Warshawsky.

That since February, 1928, Arthur instructed his salesmen or assistants, when a purchaser inquired for an article of merchandise which was not then in stock in the Ogden Avenue store, to request a deposit for the article and to inform the purchaser that it would be procured at the ''main store,'' or at the ''State Street store''; that these instructions were followed, and thereby the purchasing public were led to believe that the Ogden Avenue store was a *branch store* of complainant, to its great injury; that this policy has been pursued by defendant corporation and with the knowl-

edge of the individual defendants; and that, as a result, much confusion has arisen in the minds of the purchasing public, to complainant's damage.

That about June, 1928, Arthur commenced the distribution of key rings as souvenirs to all persons who made purchases at the Ogden Avenue store; that these rings were accompanied with a celluloid tag upon which was printed the name "A. Warshawsky & Co."; that they were distributed when complainant was conducting an advertising campaign in Chicago newspapers, using full page advertisements, announcing its anniversary sale and stating that key rings would be given away to all purchasers at such sale; and that Arthur's said acts were part of his plan or scheme to deceive the public and were done for the purpose of securing the advantage of complainant's good will, advertising and reputation.

In complainant's bill, in addition to making charges against defendants of unfair trade competition substantially as found by the court as above, it is alleged that, when in November, 1928, the individual defendants organized the corporation of the name "A. Warshawsky & Company, Inc.," they knew that the name was similar to complainant's corporate name and that they could not legally incorporate a company under such name; that their act in so doing was a part of their "scheme and conspiracy to deceive and defraud the public and injure complainant in its business"; that, in the securing of a charter with that name, they "resorted to fraudulent methods in that they secured the fraudulent action of some employees in the office of the Secretary of State, who temporarily withdrew from that office the files and records showing the existence of complainant corporation under the title 'Warshawsky & Co.' ''; that complainant was not aware of the organization of defendant corporation until in January, 1929, "whereupon the attention of the Secretary of State was called to the fact that complainant

was in good standing and that Arthur Warshawsky and his associates had no right to do business under the name of 'A. Warshawsky & Company, Inc.' ''; and that thereupon the Secretary of State notified defendant corporation by letter, suggesting that it change its name, but that it refused to comply with the suggestion. On the trial no evidence was introduced showing fraud on defendants' part in the organization of defendant corporation or in the procuring of its charter. It, however, appeared that on February 7, 1929 (about one month before complainant's present bill was filed), the Secretary of State wrote defendant corporation, saying that, inasmuch as its name is "somewhat similar" to that of complainant corporation and both are engaged in the same line of business, "complaint has been made to me that you are infringing on the name" of complainant corporation; and the Secretary of State suggested that, "in order to save expense of litigation, it would be to your advantage to change your name." After the letter had been referred to the attorney for defendant corporation for advice and reply, he, with authority, replied to the effect that "two brothers were in the used auto business, both using their own names," that both incorporated their respective businesses, that defendant company "feels that it is entitled to the same protection on its name as the former is," and that "there is sufficient distinction in the names." The letter concluded that defendant corporation "would be reluctant to surrender its corporate name, and would defend any court action to that end." It does not appear that any *direct* proceeding by State officials ever was commenced to compel defendant corporation to change its name or to surrender its existing charter.

Counsel for defendants contend that the decree appealed from should be reversed because complainant does not come into court with clean hands, and, hence, is not entitled to any equitable relief. The supporting argument, as we understand it, is substantially that

complainant's present business is not warranted by its charter; that engaging in the used automobile accessories business, etc. constitute *ultra vires* acts; and that, even though defendants may be held to have engaged in some unfair competition, complainant has not *legally* been injured. We do not think that the contention is meritorious. Even if it can be held that complainant's hands are unclean for the reasons as argued, defendants are in no position in this suit to complain. In the case of *City of Chicago v. Union Stock Yards and Transit Co.*, 164 Ill. 224, 237, it is said:

"Counsel do not claim that a forfeiture of the charter may be declared in this proceeding, but insist that as it appears in the case that appellee is engaged in illegal acts in the use of its road it does not come into court with clean hands, and is not therefore entitled to equitable relief. We cannot accede to this view, but are of the opinion that the maxim invoked cannot have any just application to the facts of this case. If a defendant to a bill in equity brought by a corporation could defeat it by simply showing that the complainant had committed *ultra vires* acts, then no corporation so guilty could ever obtain equitable relief in any case. The maxim must have the same application as between individuals, and, as said in Bispham's Principles of Equity (p. 48), it 'only applies to the particular transaction under consideration, for a court will not go outside of the case for the purpose of examining the conduct of the complainant in other matters or questioning his general character for fair dealing.' The wrong must have been done to the defendant himself and must have been in regard to the matter in litigation. (Citing cases.) If appellee has forfeited its charter by acts *ultra vires,* the State may enforce such forfeiture by an appropriate action, but the company cannot be denied relief in a proper case in a court of equity because of such acts." (See, also, *Carpenter's Union v. Citizens Committee*, 333 Ill. 225, 250.)

Counsel for defendants also contend that the decree should be reversed because the defendant, Arthur Warshawsky, was the prior user of the family name "Warshawsky" in connection with the automobile accessories, etc. business which is similar to that now carried on by defendant corporation, and that neither he nor defendant corporation can properly be enjoined, from using that family name by one who is a later user thereof in a similar business. While the evidence as to who was the prior user of the family name, in connection with the particular business involved, was conflicting, it appears that, after complainant corporation was organized and commenced doing business, Arthur, in 1919, sold to it all of the stock and merchandise of his then business and did not afterwards engage in any business for a period of about six months, when he re-engaged in substantially the same business. The question, however, who was the prior user of the family name in connection with the particular business involved, is not of controlling importance. The question rather is, whether Arthur, after he re-engaged in the business, and whether defendant corporation succeeding to that business, made an honest use of the family name. In *Howe Scale Co. v. Wyckoff, Seamans & Benedict,* 198 U. S. 118, the court (p. 136) quoted with approval what is said in *Singer Mfg. Co. v. June Mfg. Co.,* 163 U. S. 169, 187, viz.:

"Every one has the absolute right to use his own name honestly in his own business, even though he may thereby incidentally interfere with and injure the business of another having the same name. . . . But, although he may thus use his name, he cannot resort to any artifice, or do any act calculated to mislead the public as to the identity of the business, firm, or establishment, or of the article produced by them, and thus produce injury to the other beyond that which results from the similarity of name."

·And the court in the *Howe Scale Co.* case further said (p. 136) that there was no practical distinction to be made between the use of such name in a firm or its use in a corporation, and that "it is dishonesty in the use that is condemned, whether in a partnership or corporate name, and not the use itself." In *L. E. Waterman Co. v. Modern Pen Co.,* 235 U. S. 88, 94, it is said:

"But, whatever generality of expression there may have been in the earlier cases, it now is established that when the use of his own name upon his goods by a later competitor will and does lead the public to understand that those goods are the product of a concern already established and well known under that name, and when the profit of the confusion is known to and, if that be material, is intended by the later man, the law will require him to take reasonable precautions to prevent the mistake. . . . There is no distinction between corporations and natural persons in the principle, which is to prevent a fraud."

In the present case the court, in particular findings as above stated, found in effect that in several ways the defendant corporation and the individual defendants had made and were making a dishonest use of the family name and had engaged and were engaging in a policy of unfair trade competition towards complainant. After reviewing the voluminous transcript we are of the opinion that these particular findings are sufficiently sustained by the evidence, and that the court was warranted in perpetually enjoining all the defendants from doing acts as stated in paragraphs 3 to 6, inclusive, in the decree as first above mentioned.

But we are of the opinion that paragraphs 1 and 2 of the decree, as to defendant corporation and also the three individual defendants, are too drastic and are unwarranted. In paragraph 1, as to defendant corporation, it is enjoined "from using the name 'A. Warshawsky & Company, Inc.' " In paragraph 1, as to the

individual defendants, they are enjoined from using that name (not including the "Inc.") "in print, script or writing, in any form whatsoever." The individual defendants are officers and stockholders of defendant corporation. By said paragraph defendant corporation, which has an existing charter or franchise to do a particular and lawful business, is virtually prohibited from exercising its chartered powers unless it changes its name. Furthermore, the decree is entered in a collateral proceeding and not in a direct one brought by the State. By paragraph 2, as to defendant corporation, it is enjoined from using the name "Warshawsky" in the advertising, distribution or sale of the merchandise in which it deals, or in any signs, literature, advertising matter, etc. And by paragraph 2, as to the individual defendants, they are similarly enjoined from the use of the family name "Warshawsky," *unless* accompanied, in letters of equal size, etc., with the words "not connected with the *original* Warshawsky & Co." We do not think that the word "original" can be justified. In *Johnson Mfg. Co. v. Johnson Skate Co.*, 313 Ill. 106, in a similar proceeding, the decree enjoined the use of the name "Alfred Johnson Skate Company" without the use of the words "not connected with the *original* Nestor Johnson Manufacturing Company." Our Supreme Court, however, said (p. 126) that "it is not necessary to enjoin entirely the use of the word 'Johnson' or the appellee's corporate name. The object is to prevent the deception of purchasers, and the decree was sufficient for this purpose without the use of the word 'original,' which it directed should be used in the reference to the Nestor Johnson Manufacturing Company, required as a suffix to appellee's corporate name. This word should be stricken out of the suffix which the decree required to be used in connection with appellee's corporate name."

Our conclusions are (a) that paragraphs 3 to 6, inclusive, of the decree, as to all defendants, should be continued in force; (b) that paragraph 1 of the decree (wherein defendant corporation is enjoined generally from using its corporate name and the individual defendants are enjoined generally from using such name or a similar one) should be eliminated; and (c) that paragraph 2 of the decree, both as to defendant corporation and the individual defendants, be so modified as to read substantially as follows: That defendant corporation, its officers, employees, agents, etc., and the three individual defendants, their agents, attorneys, etc., be perpetually enjoined from using, in connection with the business of defendant corporation as now carried on, in advertisements or on signs, stationery, etc., the name of defendant corporation ''A. Warshawsky & Company, Inc.,'' or any similar name in which the word ''Warshawsky'' is displayed, *unless* accompanied with the words ''not connected with Warshawsky & Co., a corporation.''

Accordingly the decree of the superior court is affirmed in part and reversed in part, and the cause is remanded with directions to the superior court to enter a modified injunctional decree against defendants not inconsistent with the views herein expressed. No costs will be taxed in this court as against either of the parties.

*Affirmed in part and reversed in part and remanded with directions.*

BARNES, P. J., and SCANLAN, J., concur.