THE WILTON MORTUARY, INC., Plaintiff-Appellee, v. WOOLSEY-WILTON FUNERAL HOME, LTD., Defendant-Appellant.

Third District No. 3—85—0676

Opinion filed January 6, 1986.

Burt L. Dancey, of Elliff, Keyser, Oberle & Davies, P.C., of Pekin, for appellant.

William R. Kohlhase and Jeffrey Alan Ryva, both of Davis & Morgan, of Peoria, for appellee.

JUSTICE WOMBACHER delivered the opinion of the court:

Defendant Woolsey-Wilton Funeral Home, Ltd. (Woolsey-Wilton), appeals the granting of a preliminary injunction that prohibited it from using the name or mark "Wilton" in connection with its business within a 25-mile radius of Peoria. We reverse.

Richard Wilton, president of Woolsey-Wilton, was fired by plaintiff, the Wilton Mortuary, Inc. (the mortuary), in September 1984. The mortuary had been run by the Wiltons in Peoria since 1884. Richard's father, Ralph Wilton, Sr., died in 1981. Ralph's wife, Lillian, Richard's stepmother, became chairman of the board of the mortuary. Robert Wilton, Richard's half-brother, is the current president of the mortuary, while Ralph, Jr., Richard's other half-brother, is also an employee.

Upon his termination, the mortuary tendered a severance agreement to Richard. The agreement provided for cash payments, insurance, and pension and profit-sharing in exchange for a covenant not to compete in the Peoria area for a six-month period. Richard rejected the offer and looked for other employment.

Richard met with Baird Woolsey and obtained employment with Woolsey's Pekin funeral home. In February 1985, Richard and Baird Woolsey discussed the possibility of creating a new business in Peoria. They found a location on the northwest side of Peoria, some seven miles from the mortuary's location.

On April 29, 1985, the mortuary obtained as a registered trademark "Wilton" to cover various burial items. The mortuary also obtained a registered service mark on the name "Wilton" relating to funeral services. Both the trademark and the service mark were obtained pursuant to "An act to provide for the registration and protection of trademarks, service marks, and trade names ***" (Trademark Act) Ill. Rev. Stat. 1983, ch. 140, par. 8 et seq.

On April 30, Richard Wilton and Baird Woolsey incorporated their business. Woolsey owns 75% of the stock in the corporation, while Richard Wilton owns 25%. Richard Wilton is the president of the corporation, and Baird Woolsey is the secretary-treasurer. Woolsey-Wilton planned to construct a new funeral home on the earlier-mentioned site. In conjunction with this, a press conference was held to announce the corporation and the new building.

In May, the mortuary made a request of Woolsey-Wilton that they not use the name "Wilton" in connection with the new business. Woolsey and Wilton did not comply with the request. On May 31, the mortuary filed a two-count complaint seeking a declaration of rights and injunctive relief. The claim was based on the alleged confusion with and dilution of the mortuary's service mark.

Upon the mortuary's request for a preliminary injunction, a hearing was held. The injunction issued October 8, 1985, barring Woolsey-Wilton from using the name "Wilton" in regard to its funeral home or services within a 25-mile radius. Woolsey-Wilton brings this interlocutory appeal under Supreme Court Rule 307 (87 Ill. 2d R. 307).

In reviewing a case on a preliminary injunction, we must decide whether there has been an abuse of the trial court's sound discretion in granting or not granting the injunction. (*Lonergan v. Crucible Steel Co. of America* (1967), 37 Ill. 2d 599, 229 N.E.2d 536.) In order to obtain a preliminary injunction, the movant must show the possession of a right which needs protection, irreparable injury without the protection, lack of an adequate remedy at law, and the probability of success on the merits. (*U-Haul Co. v. Hindahl* (1980), 90 Ill. App. 3d 572, 413 N.E.2d 187.) The movant must prove these requirements by a preponderance of the evidence, not such that relief on the merits is warranted, but that the party would probably be entitled to relief if the proof sustains the allegations. (*U-Haul Co. v. Hindahl* (1980), 90 Ill. App. 3d 572, 413 N.E.2d 187.) Substantive issues will be considered as needed to determine the propriety of the trial court's decision. *Donald McElroy, Inc. v. Delaney* (1979), 72 Ill. App. 3d 285, 389 N.E.2d 1300.

The Trademark Act authorizes the circuit courts to issue an injunction in cases where claims of dilution and confusion are made. Thus, an injunction is an appropriate remedy. However, the central issue in this appeal is the mortuary's likelihood of success on the merits. The mortuary's argument is two-fold.

The first claim is made on the allegation that Woolsey-Wilton's use of the name "Wilton" would dilute the distinctive quality of the mortuary's name and mark. This is based on section 15 of the Trademark Act, which reads in pertinent part, "[T]he circuit court shall grant injunctions, to enjoin use by another *** of any similar mark *** if there exists a likelihood of dilution of the distinctive quality of the mark ***." Ill. Rev. Stat. 1983, ch. 140, par. 22.

The second claim is that Woolsey-Wilton's use of "Wilton" would cause confusion, based on section 12 of the Act. That section makes liable one who colorably imitates a mark. The claim is, also, based on section 13, which allows the circuit court to enjoin such use. Ill. Rev. Stat. 1983, ch. 140, pars. 19, 20.

There are several cases pertinent to the present situation to which the parties have directed our attention. The first is *Hyatt Corp. v. Hyatt Legal Services* (7th Cir. 1984), 736 F.2d 1153. While not dispositive, the *Hyatt* case provides an instructive analysis of whether di-

lution exists under the Trademark Act. The court first examined the distinctiveness of the mark, finding the hotel's tradename to be distinct. "Hyatt" was used by the hotel to indicate the source and quality of the service provided. The second examination concerned whether the use of the mark diluted it. Factors to be considered included the similarity between the marks and the extent of the marketing effort by the second user.

The court found the denial of the requested injunction to be an abuse of discretion. It remanded with directions for Hyatt Legal Services to determine the distinction or limitation to be placed on their use of "Hyatt." The court preliminarily approved of either "Joel Hyatt Legal Services" or a combination of the last names of the partners. The court noted that the latter was common among law firms. During oral argument, counsel for Woolsey-Wilton suggested that a combination of partner names, such as "Woolsey-Wilton" was customary in undertaking businesses.

*Nestor Johnson Manufacturing Co. v. Alfred Johnson Skate Co.* (1924), 313 Ill. 106, 149 N.E. 787, presents a situation very similar to the present case. Nestor and Alfred were brothers. Nestor was a famous skating star. They formed the plaintiff company which manufactured a specific style of ice skate. Alfred then withdrew from the Nestor Johnson company and formed his own company that manufactured the same type of ice skate. Nestor brought suit in an effort to enjoin his brother's company from using "Johnson Skates."

The supreme court found that "Johnson" had acquired a distinctive name as to ice skates. The court would not completely enjoin Alfred from using his surname in promoting his own business. Yet, the court held that when the use of one's name on goods would lead the public to believe that it is the product of a well-known concern, the law required that reasonable precautions be taken to prevent deception. The court allowed Alfred to use "Johnson" in promoting his ice skates if "not connected with the Nestor Johnson Manufacturing Co." was also used in distribution and advertising.

Another similar situation existed in *Warshawsky & Co. v. A. Warshawsky & Co.* (1930), 257 Ill. App. 571. Arthur Warshawsky opened an auto parts store near his brother Israel's store. Israel had developed a distinct use of "Warshawsky" in connection with his business that created a widespread reputation. Arthur then erected an electric sign that read "A. Warshawsky & Co." In the sign, "A." and "& Co." were less than a third of the size of "Warshawsky." Also, the "A." did not light up. The trial court found that Arthur's actions were intended to mislead the public and gain an advantage from Isra-

el's business and good will.

The appellate court held that a permanent injunction preventing Arthur from using "A. Warshawsky & Co." and "Warshawsky" was overbroad. It was also held that while it was proper to restrain Arthur from taking unfair advantage of Israel's company's reputation, it could be done by modifying Arthur's company's advertising, etc., by including in it "not affiliated with Warshawsky & Co., a corporation."

We also note *Berghoff Restaurant Co. v. Lewis W. Berghoff, Inc.* (7th Cir. 1974), 499 F.2d 1183. Lewis had worked in the plaintiff family restaurant in downtown Chicago. He then opened his own restaurant in Elgin, 40 miles from the downtown restaurant. His advertising and menus carried disclaimers. The court observed differences in the two restaurants and that Lewis had significantly contributed to the good will of the "Berghoff" name. The trial court balanced the equities in forming an injunction that was approved on review. The injunction required the use of "Lewis" when using his surname in operating a restaurant and disclaimers in advertising and menus.

We approve of the positions taken in the above case and find the logic to be most appealing. In applying the *Hyatt* analysis to the case at hand, the evidence supports, for purposes of an injunction, that "Wilton" had become distinct in funeral services. However, examination of the marks leads us to believe that there is not such similarity that "The Wilton Mortuary, Inc." would be diluted by defendant's use of "Woolsey-Wilton Funeral Home, Ltd." Further support is provided by analysis of the marks of the parties:

■ We note that Richard Wilton's employment at the mortuary contributed to the good will that "Wilton" carries in the Peoria area. He is thus equitably entitled to some benefit of the surname whose reputation he helped build. This case does differ from those above, however, as it is not *Wilton v. Wilton,* nor *Hyatt v. Hyatt,* nor *Warshawsky v. Warshawsky.* We find that "Woolsey-Wilton" sufficiently distinguishes "Wilton" so that the average consumer would not be confused.

■ Thus, the injunction, as formed by the trial court, is improper. Regardless of the registered status of "Wilton," to prevent Richard Wilton the use of his surname, in connection with Woolsey-Wilton, is

an abuse of discretion. If the trial court feels that, after the hearing on the merits, and suggestions by the parties, an injunction similar to those described above is needed to prevent confusion or dilution, it shall cause one to issue.

For this reason, we do not believe that the mortuary successfully made a preliminary showing of likelihood of success on the merits. Sufficient distinction exists, unless proven otherwise, that there would be no dilution nor confusion. Therefore, the grant of the preliminary injunction, being an abuse of discretion, is hereby reversed. The cause is remanded for further proceedings.

Reversed and remanded.

HEIPLE, P.J., and SCOTT, J., concur.