ROSARIO D. SALERNO'S SONS, INC., d/b/a Salerno Funeral Home, Plaintiff-Appellee, v. ROSEMARY SALERNO BUTTA, a/k/a Rosemary Salerno, Defendant-Appellant.

First District (1st Division)    No. 1—93—3155

Opinion filed April 25, 1994.—Rehearing denied June 21, 1994.—Modified opinion filed June 27, 1994.

Jenner & Block (Thomas P. Sullivan, Bradford P. Lyerla, and Daniel J. Winters, of counsel) and Edward W. Williams, both of Chicago, for appellant.

Keck, Mahin & Cate, of Chicago (Malcolm McCaleb, Jr., Robert M. Kluchin, and Wayne L. Tang, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff, Salerno's Sons, filed a complaint for preliminary injunction against defendant, Rosemary Salerno, to prevent her from advertising her funeral business under the name "Rosemary Salerno." The trial judge granted Salerno's Sons' requested relief, but permitted defendant to advertise her business under the name "Butta-Salerno" in conjunction with a disclaimer of any association with Salerno's Sons. Defendant then filed this interlocutory appeal. On appeal, defendant contends: (1) that the trial judge erred in not conducting an evidentiary hearing; and (2) that the court's injunction is overbroad because it violates the rule that injunctions in "personal name" trademark cases should be drawn as narrowly as possible.

This case presents a family dispute over the use of the family name, Salerno, to advertise and promote funeral-related businesses. Salerno's Sons has provided funerals and related services in and around the Chicago area since 1902. Salerno's Sons does business under the registered service marks "ROSARIO D. SALERNO FUNERAL HOME," "SALERNO FUNERAL HOME," AND "SALERNO'S GALEWOOD CHAPEL." The name "SALERNO" has been used prominently in Salerno's Sons business, advertising, letterhead, and mailings. Defendant concedes that the name "SALERNO" alone and

as part of the registered service marks has acquired substantial secondary meaning, goodwill, and distinctiveness in the funeral business.

Defendant began to work with her father, uncles, and cousins at Salerno's Sons in 1958. She became a licensed funeral director in 1961 and worked full time in that capacity until 1972. In 1964, defendant's father died and her uncles obtained her father's ownership interest in Salerno's Sons. In 1965, defendant married Andrew Buttacavoli. In 1968, her husband shortened his name to Butta and defendant legally changed her name to "Rosemary Salerno Butta." Defendant was divorced in 1972, but did not legally change her name from "Butta" at that time. It was not until May 1992 that defendant legally changed her name from "Rosemary Salerno Butta" to "Rosemary Butta Salerno."

According to her affidavit attached to her responsive pleadings, however, defendant maintains that upon her divorce in 1972 she ceased using her husband's name in social situations. She also asserts that she never used the name "Butta" professionally in the funeral service business. In support of this assertion she points to the following facts: (1) her Illinois funeral director's license has always been registered under her full given name, "Rosemary Theresa Salerno"; (2) she was prominently identified as Rosemary Salerno on promotional calendars distributed each year during the 1960's by Salerno's Sons; and (3) she has signed every death certificate for funerals she has conducted over the past 35 years as Rosemary Salerno. Consequently, she contends that she is widely and favorably known in the funeral business to members of the public who are likely to use her services as Rosemary Salerno. Salerno's Sons, however, contends that she had identified herself as Rosemary Butta because she allegedly received mail addressed to Rosemary Butta at the funeral home and she filed her W-2 tax forms as Rosemary Butta.

It is uncontested that in 1972, the year of her divorce, defendant ceased working as a full-time funeral director at Salerno's Sons apparently because the funeral home could not afford to retain her on a full-time basis. She took a full-time position in the restaurant business for the next 14 years. Defendant asserts in her affidavit, however, that she worked "as needed" at Salerno's Sons between 1972 and 1986. Salerno's Sons, on the other hand, maintains that she did not work at the funeral home during those years and contends that it never paid her for any services from 1972 through 1985.

In 1986, defendant returned to Salerno's Sons as a full-time funeral director. In 1990, the sons of Joseph Salerno, the president of Salerno's Sons, joined the business. According to defendant, Joseph

Salerno then made it clear that she was no longer needed. She asserts that he reduced her pay and took other steps to force her to leave the funeral home. She claims that, as a result, she had no choice except to leave Salerno's Sons in September 1992 and start her own business as a funeral director. Salerno's Sons, on the other hand, asserts that she "became dissatisfied with her financial compensation and voluntarily resigned."

Upon leaving Salerno's Sons, defendant became associated with the Adinamis and Cuneo Columbian Funeral homes in Chicago. She also established her own funeral business out of her Wheaton home and began advertising and obtaining telephone listings under the name "Rosemary Salerno." Before the trial court issued the preliminary injunction, defendant had included in her advertisements the disclaimer that she was "[f]ormerly of Salerno Galewood Chapel." At the time this lawsuit was filed, defendant had conducted two funerals, one of which was in Chicago. She admitted in her affidavit that she had received several telephone calls from people on her suburban phone number or on her 1-800 number, which was listed as "Rosemary Salerno, Funeral Director," inquiring about wakes being conducted at Salerno's Galewood Chapel. She asserts, however, that in those instances she did not deceive the callers and gave them the correct number.

On March 2, 1993, Salerno's Sons filed a four-count complaint against defendant and, on March 4, 1993, moved for a preliminary injunction. Salerno's Sons contends that defendant's use of the name "Rosemary Salerno" to promote her funeral business is impermissibly confusing with Salerno's Sons' trademarks. Defendant filed her verified answer on April 3, 1993. After the submission of affidavits by both parties and a full briefing of the issues, a hearing on the motion for preliminary injunction was held on May 3, 1993.

Without conducting a full evidentiary hearing and based solely on the pleadings and affidavits, the judge made the following findings: (1) that Salerno's Sons' service marks were valid and thus entitled to protection; (2) that the use of these marks by Salerno's Sons and defendant in connection with funeral-related services is virtually identical; (3) that there is a likelihood of confusion as demonstrated by several instances of actual confusion; and (4) that defendant utilized her married name of Butta while employed at Salerno's Sons and only recently adopted the family name when she left Salerno's Sons and began to advertise for her own business. Based upon these findings the judge concluded that Salerno's Sons satisfied the elements necessary to establish its right to a preliminary injunction. Therefore, he preliminarily enjoined defendant from using the

surname Salerno to advertise or promote her funeral business except in the following manner: (1) she may operate her business under the name "Butta-Salerno Funeral Services"; (2) she must accompany any formal advertising with a disclaimer explaining that she is not affiliated with the Salerno Funeral Home; (3) she may not use her first name "Rosemary" because of its similarity to "Rosario"; and (4) all her telephone listings must be in the name of "Butta-Salerno Funeral Services."

On June 2, 1993, defendant filed a motion to reconsider and asked the court to either dissolve or modify the preliminary injunction. On August 12, 1993, the judge denied defendant's motion to reconsider. Defendant then filed this interlocutory appeal.

■ Defendant's first contention on appeal is that the trial judge erred in granting the preliminary injunction without conducting an evidentiary hearing. She asserts that contested issues of material fact exist and that, in such a situation, a court cannot issue a preliminary injunction without first conducting an evidentiary hearing. Salerno's Sons, on the other hand, argues that any questions of fact which do exist are not "material" and are irrelevant to the issue of whether a preliminary injunction should have been granted against defendant's alleged trademark infringement.

Defendant filed a verified answer to Salerno's Sons' complaint and an affidavit setting forth her version of the relevant facts. As a general rule, when a defendant files a verified answer or affidavits contesting material allegations in a complaint, an evidentiary hearing on those matters is required before a preliminary injunction may be issued. (*Proulx v. Illinois High School Association* (1984), 125 Ill. App. 3d 781, 786, 466 N.E.2d 620, 623; *Peoples Gas Light & Coke Co. v. City of Chicago* (1983), 117 Ill. App. 3d 353, 355, 453 N.E.2d 740, 742; *Centennial Laundry Co. v. West Side Organization* (1966), 34 Ill. 2d 257, 262, 215 N.E.2d 443, 446.) A review of the pleadings demonstrates, however, that no fact material to the judge's determination that a preliminary injunction should issue was contested.

In order to prevail on a trademark infringement claim, a plaintiff must demonstrate: (1) that its service mark is a valid mark entitled to legal protection; (2) that defendant is using a similar mark; and (3) that defendant's use of the similar mark creates a "likelihood of confusion" by the consuming public. (*Thompson v. Spring-Green Lawn Care Corp.* (1984), 126 Ill. App. 3d 99, 105, 466 N.E.2d 1004, 1010.) In order to obtain a preliminary injunction to enjoin a defendant from using an allegedly infringing mark, plaintiff must demonstrate by a preponderance of the evidence "the possession of a right which needs protection, irreparable injury without the protection, lack of an ade-

quate remedy at law, and the probability of success on the merits." (*Wilton Mortuary, Inc. v. Woolsey-Wilton Funeral Home, Ltd.* (1986), 140 Ill. App. 3d 1074, 1076, 489 N.E.2d 319, 320.) We will not disturb a trial court's decision to grant a preliminary injunction unless the court abused its discretion. *Wilton Mortuary*, 140 Ill. App. 3d at 1076, 489 N.E.2d at 320.

Defendant concedes that Salerno's Sons' service marks are valid marks entitled to legal protection. Additionally, it is facially apparent that defendant's mark is identical or virtually identical to Salerno's Sons' marks. Moreover, it cannot be contested that defendant is in competition with Salerno's Sons. Defendant argues, however, that a question of fact exists as to whether there is a "likelihood of confusion" created by her use of the name "Salerno." She asserts, therefore, that the trial judge abused his discretion in granting the preliminary injunction without conducting an evidentiary hearing on the question of confusion.

Defendant stated in her affidavit, however, that she received several phone calls from people on her suburban phone number or on her 1-800 number, which has her listed as "Rosemary Salerno, Funeral Director," inquiring about wakes being conducted by Salerno's Sons. In light of the fact that defendant has admitted several instances of actual confusion resulting from her use of the name "Salerno" to advertise her business, no question of fact exists on the issue of likelihood of confusion. Thus, there were no material allegations at issue whose resolution at an evidentiary hearing would have been required before Salerno's Sons' right to a preliminary injunction could be established. Accordingly, we believe that Salerno's Sons established its right to a preliminary injunction by a preponderance of the evidence.

■ Defendant's second contention on appeal, however, is that, assuming Salerno's Sons is entitled to a preliminary injunction, the trial judge's injunction is overbroad. Defendant asserts that there exists a "personal name rule" in trademark cases which provides that a person has an absolute right to use his or her personal name in business and that any injunction against that use must be drawn as narrowly as possible in order to allow that person "to exploit her identity and reputation in a legitimate manner." Defendant argues that she has been active in the funeral business for over 30 years and that she is known in the business only as "Rosemary Salerno." She maintains, therefore, that the requirement that she use the name "Butta" to advertise and promote her business has the impermissible effect of absolutely prohibiting her from capitalizing on her personal reputation which she has cultivated over the years.

Salerno's Sons, on the other hand, asserts that confusion exists irrespective of whether the mark is a personal name or not and that a person can be enjoined from using a protected service mark notwithstanding the fact that the mark also happens to be his or her personal name. Salerno's Sons contends that defendant used the name "Butta" for 23 years and did not work in the funeral business from 1972 through 1985. Therefore, Salerno's Sons argues that there is no basis to infer she has developed any reputation in the business prior to returning to the funeral home in 1986 or under the name "Salerno." Accordingly, Salerno's Sons maintains that the scope of the injunctive relief was not overbroad.

Although it has been stated that a man has an absolute right to use his own name in his own business (*Warshawsky & Co. v. A. Warshawsky & Co.* (1930), 257 Ill. App. 571, 583), a review of the cases in this area shows "that often the language used is broader than the facts require, and that the cases were ones in which confusion could effectively be averted if the newcomer were required only to qualify his use of the name by prefix, suffix, or explanation." (*Hat Corp. of America v. D.L. Davis Corp.* (D. Conn. 1933), 4 F. Supp. 613, 620-21; see *Berghoff Restaurant Co. v. Lewis W. Berghoff, Inc.* (N.D. Ill. 1973), 357 F. Supp. 127, *aff'd* (7th Cir. 1974), 499 F.2d 1183; *Warshawsky*, 257 Ill. App. at 571.) In fact, courts have completely enjoined the use of a person's name in his business if there is no way to avoid confusion and injury to the original user of the name. (*Hat Corp.*, 4 F. Supp. at 623.) Thus, there is no "personal name rule" which gives a person an absolute right to use his name in business. (See *MacSweeney Enterprises, Inc. v. Tarantino* (1965), 235 Cal. App. 2d 549, 560, 45 Cal. Rptr. 546, 553 (when a person "cannot use his name without inevitably representing his goods as those of another[,] he may be enjoined from using his name in connection with his business").) Confusion arises irrespective of whether the mark used is or is not a personal name. Thus, a surname is treated the same as any other trademark because "[g]ood will established through effort and labor should be deserving of more consideration than the fact that the business name of a competitor happens to be identical with his own family name." *Berghoff*, 357 F. Supp. at 131.

It must be recognized, however, that in many "personal name" infringement cases the "second comer" often has his own background of experience in the particular business and "is not simply a newcomer." (*Taylor Wine Co. v. Bully Hill Vineyards, Inc.* (2d Cir. 1978), 569 F.2d 731, 734.) In such cases, courts have been "highly solicitous" to the individual's right to exploit his own identity and reputation in a legitimate manner. (*Joseph Scott Co. v. Scott Swimming*

*Pools, Inc.* (2d Cir. 1985), 764 F.2d 62, 67; *Taylor Wine*, 569 F.2d at 734.) Thus, although injunctions should always be as limited as possible, fashioning a proper order in a "personal name" case where the "second comer" previously had developed a personal reputation in the business is particularly difficult. In such cases, "a court must be particularly cautious to enjoin only those uses that are likely to create appreciable confusion \*\*\*, no more." (*Joseph Scott*, 764 F.2d at 67.) The *Joseph Scott* court cogently explained the judicial balancing that must take place:

> "The ultimate aim is to frame an injunction that will avoid confusion in the marketplace, protect a prior company's property interest in its name, and permit an individual to exploit his own identity and reputation in a legitimate manner." *Joseph Scott*, 764 F.2d at 67.

The following cases illustrate the application of the above-stated principles. In *Hat Corp.*, H. De Witt Dobbs, a man with much experience in the retail sale of hats, formed a corporation called "Dobbs & Co." to engage in the manufacture and sale of headwear. Dobbs & Co. advertised the products as "Dobbs" hats and, using this mark, developed a very large and successful business. The plaintiff, Hat Corporation of America, was a predecessor company to the original "Dobbs & Co." In 1931, after plaintiff and its predecessors had spent over 30 years cultivating its market and developing a reputation for producing quality headwear under the name "Dobbs," defendant began to market headwear under the name "Wm. H. Dobbs." Defendant acquired the right to use this name by getting the permission of Wm. H. Dobbs, the son of H. De Witt Dobbs.

The court in *Hat Corp.* reasoned that, at the time Wm. H. Dobbs gave defendant permission to use his name in the manufacture and sale of hats, Wm. H. Dobbs' name did not have any established good will associated with it nor had Wm. H. Dobbs acquired any particular reputation in the hat business. In fact, the court concluded that the only commercial value of the name "Wm. H. Dobbs" was its likelihood to confuse the public into mistaking it for the plaintiff's product, which was known in the marketplace under the name of "Dobbs" alone. Additionally, the court noted that this was not a case where Wm. H. Dobbs had tried for years to establish himself in the business and was now transferring his name to a partnership of which he was a member with a pecuniary interest. Wm. H. Dobbs did not manufacture or design the hats. In fact, he did nothing more than the duties of any manufacturer's sales manager. Therefore, the court in *Hat Corp.* held that no disclaimer would be able to cure the confusion and wholly enjoined defendant from any use of the name "Dobbs" in connection with its products.

In *Joseph Scott*, Joseph M. Scott, Sr., started a company called "Scott Swimming Pools, Inc." (SSPI), which, over a number of years, developed a reputation for building quality swimming pools. Joseph, Sr.'s sons, James and Joseph, Jr., both worked in the family business as youths, but James' participation was more constant. Thus, James eventually took over the business from his father. After 10 years away from the business, Joseph, Jr., returned to SSPI as a salesman and customer relations representative. Almost immediately, the two brothers disagreed about the operation of the company and Joseph, Jr., left SSPI to start his own company called "AquaScapes." SSPI agreed that AquaScapes would be its sole residential sales agent in Fairfield County, Connecticut. Over the next 10 years, AquaScapes promoted and sold SSPI swimming pools. At the same time, Joseph, Jr., developed his own reputation in the business as a designer of quality custom pools. Joseph, Jr., then decided to terminate the relationship between AquaScapes and SSPI. He changed the name of his company to the "Joseph Scott Company" and included in his slogan the following words: "Swimming Pool Craftsmen & Landscape Designers for Three Generations." Testimony from experienced professionals in the landscape business established that the name Joseph Scott, Jr., was synonymous with SSPI in Fairfield County and that there existed confusion regarding the affiliations of the Scott brothers to their respective firms.

The *Joseph Scott* court concluded that it was appropriate to enjoin defendant from using the word "Scott" in the name of his company in light of the fact that his use caused actual confusion in the marketplace. The court reasoned, however, that where the "second comer" owns the company and shows a genuine interest in establishing a business in which he has already developed some skill and knowledge, if possible, he should be able to exploit his reputation as a person by using his own name, albeit in some restricted fashion. The court noted that Joseph, Jr., had a "legitimate and compelling interest" in using his name in connection with his pool business because, over the previous 12 years, he had developed a reputation as a designer of quality custom built pools. The court held, therefore, that, although he could not use the name "Scott" in the name of his corporation, Joseph, Jr., could use his full name in connection with his business to describe his past accomplishments and expertise, as long as he attached a disclaimer which made it clear that his company was not associated with SSPI. The court reasoned that this would be sufficient to prevent him from trading on SSPI's good will and from competing unfairly.

In *Berghoff Restaurant*, plaintiff was a family owned and run

restaurant business which had existed in Chicago since 1898 under the name "Berghoff." The defendant, Lewis W. Berghoff, worked for the plaintiff corporation for 14 years before leaving to form his own restaurant in Elgin, Illinois, under the name "Lewis Berghoff Inn." The court reasoned that, although a surname should be accorded the same protection as any other trademark, "this is not a case where the defendant has contributed nothing to the good will of the surname he seeks to use." (*Berghoff*, 357 F. Supp. at 131.) The court noted that defendant worked for plaintiff for 14 years and, therefore, his contribution to the good will of the Berghoff name "was more than insignificant." (357 F. Supp. at 132.) A very "delicate balancing of the equities," therefore, was required. (357 F. Supp. at 132.) Accordingly, the court held that defendant was enjoined from using the name "Berghoff" unless it was preceded by his given name, "Lewis," in the same size lettering as his surname and accompanied by a disclaimer that his business was "[n]ot affiliated with the Berghoff Restaurants in Chicago." 357 F. Supp. at 132.

Finally, in *Wilton Mortuary*, Richard Wilton was fired by the plaintiff, The Wilton Mortuary, Inc. Richard then formed a competing business with a man named Baird Woolsey called the Woolsey-Wilton Funeral Home, Ltd. Richard was president and owned 25% of the business. The court concluded that the marks were not so similar that "The Wilton Mortuary, Inc.," would be diluted by defendant's use of "Woolsey-Wilton Funeral Home, Ltd." The court also determined that Richard's employment at the plaintiff's corporation contributed to the good will of the name "Wilton" and thus he was "equitably entitled to some benefit of the surname whose reputation he [had] helped build." *Wilton Mortuary*, 140 Ill. App. 3d at 1078.

The above cases show that an element to be considered by the trial judge when determining the scope of an injunction is the extent, if any, of the defendant's contribution to the good will of the service mark that the plaintiff is seeking to enjoin the defendant from using. An additional factor to consider is whether defendant has developed his or her own reputation in the business. Here, although Salerno's Sons was clearly entitled to an injunction to prevent defendant's unlimited use of the name "Salerno," we believe the trial judge erred in finding, without holding an evidentiary hearing, that defendant had utilized her married name of "Butta" while employed at Salerno's Sons. The evidence was conflicting as to what name defendant used professionally and the resolution of this issue by hearing witnesses on both sides at an evidentiary hearing was necessary before the judge could properly balance the equities.

Although defendant did not legally change her name back to Sal-

erno until May 1992, she avers in her affidavit that she never used the name "Butta" professionally in the funeral business. In support of this assertion, she asserts that (1) her funeral director's license has always been registered under her full given name of "Rosemary Theresa Salerno," (2) Salerno's Sons prominently identified her on promotional material as Rosemary Salerno, and (3) she signed every death certificate for funerals she conducted as Rosemary Salerno. She also asserts that she worked "as needed" at Salerno's Sons between 1972 and 1986. Thus, she argues that, over a period of 35 years, she has developed a favorable reputation in the funeral business as Rosemary Salerno.

Salerno's Sons, however, contests these assertions. Salerno's Sons maintains that defendant utilized her married name of Butta in the funeral business. In support of its contention, Salerno's Sons asserts that (1) defendant did not legally change her name from Butta to Salerno until May 1992, (2) she received mail addressed to Rosemary Butta at the funeral home, and (3) she filed her W-2 tax forms as Rosemary Butta. Salerno's Sons also asserts that defendant never worked at the funeral home between 1972 and 1986.

In fashioning the scope of the injunction, the trial judge made no determination as to whether defendant worked at Salerno's Sons between 1972 and 1986. He did conclude, however, that she utilized her married name of "Butta" and only recently adopted Salerno when she started her own business. We cannot agree that the fact that her legal name was Butta establishes as a matter of law that she was known in the business as Rosemary Butta. Thus, without making a judgment on the ultimate propriety of the scope of the injunction, we believe the trial judge was premature in fashioning the injunction without holding an evidentiary hearing on the extent of defendant's previous use of the name "Salerno" and the length of her involvement with the funeral home.

If, after an evidentiary hearing, the judge determines that defendant has been known professionally under the name "Salerno" and/or that she was employed by the funeral home between 1972 and 1986, then she will have contributed considerably to the good will of the name which Salerno's Sons is attempting to prevent her from using. (See *Berghoff Restaurant,* 357 F. Supp. at 131.) Additionally, she will have established that she has developed a reputation over the years in the funeral business as "Rosemary Salerno." Thus, she would have a "legitimate and compelling interest" in using the name "Salerno" in connection with her business. (See *Joseph Scott,* 764 F.2d at 67.) Consequently, to require her to use the name "Butta-Salerno" to identify her business may have the impermissible result

of preventing her from exploiting her reputation and the good will she has helped to develop over the years because the public which knows her will not identify her with the name "Butta." In such a case, allowing her to use her full name "Rosemary Butta Salerno" in conjunction with a disclaimer that she is not affiliated with Salerno's Sons may be sufficient to avoid confusion and, at the same time, allow her to capitalize on her reputation.

On the other hand, if she has used the name "Butta" in the funeral business and/or she did not work for Salerno's Sons between 1972 and 1986, she would have contributed much less to the good will of the name Salerno and would not have developed her reputation in the funeral business as a Salerno. Thus, the greatest commercial value of the name Salerno to defendant would not be to identify her with her services, but rather would be its likelihood to confuse the public into mistaking her services for those of Salerno's Sons. See *Hat Corp.*, 4 F. Supp. at 617.

Consequently, we find that the trial judge was correct in determining that Salerno's Sons has established its right to a preliminary injunction. We must conclude, however, that an evidentiary hearing was required before the scope of the injunction could be defined. Therefore, we reverse the trial judge's ruling and remand for an evidentiary hearing on the disputed facts relevant to the extent of defendant's involvement over the years with Salerno's Sons and the extent of her use of the name Butta. After hearing the witnesses and viewing the evidence, the trial judge should then use his discretion to enter an order which will strike a delicate balance between Salerno's Sons' right to protect its service mark and defendant's right to exploit any reputation and good will she may have developed in the business.

Accordingly, for the foregoing reasons, we reverse the decision of the circuit court of Cook County, and remand for proceedings consistent with this opinion.

Reversed and remanded.

O'CONNOR and MANNING, JJ., concur.